

### 28. CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION[1]

*(Concluded 25 October 1980)*

The States signatory to the present Convention,

Firmly convinced that the interests of children are of paramount importance in matters relating to their custody,

Desiring to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access,

Have resolved to conclude a Convention to this effect, and have agreed upon the following provisions –

CHAPTER I – SCOPE OF THE CONVENTION

### Article 1

The objects of the present Convention are –

a)      to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and

b)      to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.

### Article 2

Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.

### Article 3

The removal or the retention of a child is to be considered wrongful where –

a)      it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

b)      at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

The rights of custody mentioned in sub-paragraph *a)* above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

---

[1] This Convention, including related materials, is accessible on the website of the Hague Conference on Private International Law (www.hcch.net), under "Conventions" or under the "Child Abduction Section". For the full history of the Convention, see Hague Conference on Private International Law, *Actes et documents de la Quatorzième session (1980)*, Tome III, *Child abduction* (ISBN 90 12 03616 X, 481 pp.).

## Article 4

The Convention shall apply to any child who was habitually resident in a Contracting State immediately before any breach of custody or access rights. The Convention shall cease to apply when the child attains the age of 16 years.

## Article 5

For the purposes of this Convention –
a)   "rights of custody" shall include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence;
b)   "rights of access" shall include the right to take a child for a limited period of time to a place other than the child's habitual residence.

CHAPTER II – CENTRAL AUTHORITIES

## Article 6

A Contracting State shall designate a Central Authority to discharge the duties which are imposed by the Convention upon such authorities.
Federal States, States with more than one system of law or States having autonomous territorial organisations shall be free to appoint more than one Central Authority and to specify the territorial extent of their powers. Where a State has appointed more than one Central Authority, it shall designate the Central Authority to which applications may be addressed for transmission to the appropriate Central Authority within that State.

## Article 7

Central Authorities shall co-operate with each other and promote co-operation amongst the competent authorities in their respective States to secure the prompt return of children and to achieve the other objects of this Convention.
In particular, either directly or through any intermediary, they shall take all appropriate measures –
a)   to discover the whereabouts of a child who has been wrongfully removed or retained;
b)   to prevent further harm to the child or prejudice to interested parties by taking or causing to be taken provisional measures;
c)   to secure the voluntary return of the child or to bring about an amicable resolution of the issues;
d)   to exchange, where desirable, information relating to the social background of the child;
e)   to provide information of a general character as to the law of their State in connection with the application of the Convention;
f)   to initiate or facilitate the institution of judicial or administrative proceedings with a view to obtaining the return of the child and, in a proper case, to make arrangements for organising or securing the effective exercise of rights of access;
g)   where the circumstances so require, to provide or facilitate the provision of legal aid and advice, including the participation of legal counsel and advisers;
h)   to provide such administrative arrangements as may be necessary and appropriate to secure the safe return of the child;
i)   to keep each other informed with respect to the operation of this Convention and, as far as possible, to eliminate any obstacles to its application.

CHAPTER III – RETURN OF CHILDREN

## Article 8

Any person, institution or other body claiming that a child has been removed or retained in breach of custody rights may apply either to the Central Authority of the child's habitual residence or to the Central Authority of any other Contracting State for assistance in securing the return of the child.
The application shall contain –

a) information concerning the identity of the applicant, of the child and of the person alleged to have removed or retained the child;

b) where available, the date of birth of the child;

c) the grounds on which the applicant's claim for return of the child is based;

d) all available information relating to the whereabouts of the child and the identity of the person with whom the child is presumed to be.

The application may be accompanied or supplemented by –

e) an authenticated copy of any relevant decision or agreement;

f) a certificate or an affidavit emanating from a Central Authority, or other competent authority of the State of the child's habitual residence, or from a qualified person, concerning the relevant law of that State;

g) any other relevant document.

Article 9

If the Central Authority which receives an application referred to in Article 8 has reason to believe that the child is in another Contracting State, it shall directly and without delay transmit the application to the Central Authority of that Contracting State and inform the requesting Central Authority, or the applicant, as the case may be.

Article 10

The Central Authority of the State where the child is shall take or cause to be taken all appropriate measures in order to obtain the voluntary return of the child.

Article 11

The judicial or administrative authorities of Contracting States shall act expeditiously in proceedings for the return of children.

If the judicial or administrative authority concerned has not reached a decision within six weeks from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. If a reply is received by the Central Authority of the requested State, that Authority shall transmit the reply to the Central Authority of the requesting State, or to the applicant, as the case may be.

Article 12

Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith.

The judicial or administrative authority, even where the proceedings have been commenced after the expiration of the period of one year referred to in the preceding paragraph, shall also order the return of the child, unless it is demonstrated that the child is now settled in its new environment.

Where the judicial or administrative authority in the requested State has reason to believe that the child has been taken to another State, it may stay the proceedings or dismiss the application for the return of the child.

Article 13

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –

a) the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or

b)   there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views.
In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

## Article 14

In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

## Article 15

The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention was wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

## Article 16

After receiving notice of a wrongful removal or retention of a child in the sense of Article 3, the judicial or administrative authorities of the Contracting State to which the child has been removed or in which it has been retained shall not decide on the merits of rights of custody until it has been determined that the child is not to be returned under this Convention or unless an application under this Convention is not lodged within a reasonable time following receipt of the notice.

## Article 17

The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention.

## Article 18

The provisions of this Chapter do not limit the power of a judicial or administrative authority to order the return of the child at any time.

## Article 19

A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Article 20

The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

CHAPTER IV — RIGHTS OF ACCESS

Article 21

An application to make arrangements for organising or securing the effective exercise of rights of access may be presented to the Central Authorities of the Contracting States in the same way as an application for the return of a child.
The Central Authorities are bound by the obligations of co-operation which are set forth in Article 7 to promote the peaceful enjoyment of access rights and the fulfilment of any conditions to which the exercise of those rights may be subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.
The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organising or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

CHAPTER V — GENERAL PROVISIONS

Article 22

No security, bond or deposit, however described, shall be required to guarantee the payment of costs and expenses in the judicial or administrative proceedings falling within the scope of this Convention.

Article 23

No legalisation or similar formality may be required in the context of this Convention.

Article 24

Any application, communication or other document sent to the Central Authority of the requested State shall be in the original language, and shall be accompanied by a translation into the official language or one of the official languages of the requested State or, where that is not feasible, a translation into French or English.
However, a Contracting State may, by making a reservation in accordance with Article 42, object to the use of either French or English, but not both, in any application, communication or other document sent to its Central Authority.

Article 25

Nationals of the Contracting States and persons who are habitually resident within those States shall be entitled in matters concerned with the application of this Convention to legal aid and advice in any other Contracting State on the same conditions as if they themselves were nationals of and habitually resident in that State.

Article 26

Each Central Authority shall bear its own costs in applying this Convention.

Central Authorities and other public services of Contracting States shall not impose any charges in relation to applications submitted under this Convention. In particular, they may not require any payment from the applicant towards the costs and expenses of the proceedings or, where applicable, those arising from the participation of legal counsel or advisers. However, they may require the payment of the expenses incurred or to be incurred in implementing the return of the child.

However, a Contracting State may, by making a reservation in accordance with Article 42, declare that it shall not be bound to assume any costs referred to in the preceding paragraph resulting from the participation of legal counsel or advisers or from court proceedings, except insofar as those costs may be covered by its system of legal aid and advice.

Upon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child, or who prevented the exercise of rights of access, to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child.

Article 27

When it is manifest that the requirements of this Convention are not fulfilled or that the application is otherwise not well founded, a Central Authority is not bound to accept the application. In that case, the Central Authority shall forthwith inform the applicant or the Central Authority through which the application was submitted, as the case may be, of its reasons.

Article 28

A Central Authority may require that the application be accompanied by a written authorisation empowering it to act on behalf of the applicant, or to designate a representative so to act.

Article 29

This Convention shall not preclude any person, institution or body who claims that there has been a breach of custody or access rights within the meaning of Article 3 or 21 from applying directly to the judicial or administrative authorities of a Contracting State, whether or not under the provisions of this Convention.

Article 30

Any application submitted to the Central Authorities or directly to the judicial or administrative authorities of a Contracting State in accordance with the terms of this Convention, together with documents and any other information appended thereto or provided by a Central Authority, shall be admissible in the courts or administrative authorities of the Contracting States.

Article 31

In relation to a State which in matters of custody of children has two or more systems of law applicable in different territorial units –

*a)* any reference to habitual residence in that State shall be construed as referring to habitual residence in a territorial unit of that State;

*b)* any reference to the law of the State of habitual residence shall be construed as referring to the law of the territorial unit in that State where the child habitually resides.

Article 32

In relation to a State which in matters of custody of children has two or more systems of law applicable to different categories of persons, any reference to the law of that State shall be construed as referring to the legal system specified by the law of that State.


Article 33

A State within which different territorial units have their own rules of law in respect of custody of children shall not be bound to apply this Convention where a State with a unified system of law would not be bound to do so.


Article 34

This Convention shall take priority in matters within its scope over the *Convention of 5 October 1961 concerning the powers of authorities and the law applicable in respect of the protection of minors*, as between Parties to both Conventions. Otherwise the present Convention shall not restrict the application of an international instrument in force between the State of origin and the State addressed or other law of the State addressed for the purposes of obtaining the return of a child who has been wrongfully removed or retained or of organising access rights.


Article 35

This Convention shall apply as between Contracting States only to wrongful removals or retentions occurring after its entry into force in those States.
Where a declaration has been made under Article 39 or 40, the reference in the preceding paragraph to a Contracting State shall be taken to refer to the territorial unit or units in relation to which this Convention applies.


Article 36

Nothing in this Convention shall prevent two or more Contracting States, in order to limit the restrictions to which the return of the child may be subject, from agreeing among themselves to derogate from any provisions of this Convention which may imply such a restriction.

CHAPTER VI — FINAL CLAUSES


Article 37

The Convention shall be open for signature by the States which were Members of the Hague Conference on Private International Law at the time of its Fourteenth Session.
It shall be ratified, accepted or approved and the instruments of ratification, acceptance or approval shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.


Article 38

Any other State may accede to the Convention.
The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Kingdom of the Netherlands.
The Convention shall enter into force for a State acceding to it on the first day of the third calendar month after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such a declaration will also have to be made by any Member State ratifying, accepting or approving the Convention after an accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Kingdom of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the first day of the third calendar month after the deposit of the declaration of acceptance.


### Article 39

Any State may, at the time of signature, ratification, acceptance, approval or accession, declare that the Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect at the time the Convention enters into force for that State.

Such declaration, as well as any subsequent extension, shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.


### Article 40

If a Contracting State has two or more territorial units in which different systems of law are applicable in relation to matters dealt with in this Convention, it may at the time of signature, ratification, acceptance, approval or accession declare that this Convention shall extend to all its territorial units or only to one or more of them and may modify this declaration by submitting another declaration at any time.

Any such declaration shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands and shall state expressly the territorial units to which the Convention applies.


### Article 41

Where a Contracting State has a system of government under which executive, judicial and legislative powers are distributed between central and other authorities within that State, its signature or ratification, acceptance or approval of, or accession to this Convention, or its making of any declaration in terms of Article 40 shall carry no implication as to the internal distribution of powers within that State.


### Article 42

Any State may, not later than the time of ratification, acceptance, approval or accession, or at the time of making a declaration in terms of Article 39 or 40, make one or both of the reservations provided for in Article 24 and Article 26, third paragraph. No other reservation shall be permitted.

Any State may at any time withdraw a reservation it has made. The withdrawal shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands.

The reservation shall cease to have effect on the first day of the third calendar month after the notification referred to in the preceding paragraph.


### Article 43

The Convention shall enter into force on the first day of the third calendar month after the deposit of the third instrument of ratification, acceptance, approval or accession referred to in Articles 37 and 38.

Thereafter the Convention shall enter into force –
(1)     for each State ratifying, accepting, approving or acceding to it subsequently, on the first day of the third calendar month after the deposit of its instrument of ratification, acceptance, approval or accession;
(2)     for any territory or territorial unit to which the Convention has been extended in conformity with Article 39 or 40, on the first day of the third calendar month after the notification referred to in that Article.


## Article 44

The Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 43 even for States which subsequently have ratified, accepted, approved it or acceded to it.
If there has been no denunciation, it shall be renewed tacitly every five years.
Any denunciation shall be notified to the Ministry of Foreign Affairs of the Kingdom of the Netherlands at least six months before the expiry of the five year period. It may be limited to certain of the territories or territorial units to which the Convention applies.
The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.


## Article 45

The Ministry of Foreign Affairs of the Kingdom of the Netherlands shall notify the States Members of the Conference, and the States which have acceded in accordance with Article 38, of the following –
(1)     the signatures and ratifications, acceptances and approvals referred to in Article 37;
(2)     the accessions referred to in Article 38;
(3)     the date on which the Convention enters into force in accordance with Article 43;
(4)     the extensions referred to in Article 39;
(5)     the declarations referred to in Articles 38 and 40;
(6)     the reservations referred to in Article 24 and Article 26, third paragraph, and the withdrawals referred to in Article 42;
(7)     the denunciations referred to in Article 44.


In witness whereof the undersigned, being duly authorised thereto, have signed this Convention.

Done at The Hague, on the 25th day of October, 1980, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Kingdom of the Netherlands, and of which a certified copy shall be sent, through diplomatic channels, to each of the States Members of the Hague Conference on Private International Law at the date of its Fourteenth Session.



**United States Department of State**

*Washington, D.C.   20520*

May 4, 2016

Ryan A. Burgett, Associate
K. Chris Collins, Associate
Jennifer Ziegenhorn, Partner
Husch Blackwell
1661 International Drive, Suite 300
Memphis, Tennessee 38120

 [Via Email – Ryan.Burgett@huschblackwell.com; chris.collins@huschblackwell.com; Jennifer.Ziegenhorn@huschblackwell.com ]

Re:  Hague Convention Return Case:  **Guardado Velasquez, Nathaly Abigail**

Dear Mr. Burgett, Mr. Collins, and Ms. Ziegenhorn:

Thank you for notifying our office that you are representing **Mr. Osmin Manuel Guardado Orellano,** the applicant in the subject case. As you know, lack of affordable legal representation is a major obstacle for many parents seeking to invoke Hague Convention remedies in the United States. Your assistance is greatly appreciated.

The Hague Convention application and supporting documents were previously sent to you. Please find attached unredacted copies of these documents.  Address information is on the next page.

Our website provides numerous resources that may be of assistance in handling this case. Visit http://travel.state.gov/content/childabduction/english/legal/for-attorneys.html.  We would call your attention, in particular, to **Primary Resources** (including the Hague Convention, the International Child Abduction Remedies Act (the federal implementing statute specifying procedures for invoking the Hague Convention in the United States), the Legal Analysis of the Convention, and the Explanatory Report).  Additionally, under **Resources for Litigating Incoming Hague Convention Cases,** you'll find two guides.  The Guide to Litigating Cases in the United States (2012) has sample pleadings in Appendix H.  The Federal Judicial Center publication, Hon. James D. Garbolino, The 1980 Hague Convention on the Civil Aspects of International Child Abduction: A Guide for Judges *Second Edition* (2015), is informative for judges and attorneys alike.

Because the Hague Convention remedy is non-exclusive and state law may offer other means of achieving the client's objectives (*e.g.,* enforcing a foreign custody determination),  our website provides information about uniform state laws that may apply: the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) and the Uniform Child Abduction Prevention Act (UCAPA).  There is also a comparison of the Hague Convention and state law remedies. Links to articles about these statutes are available on our website.

We assume that you will follow your usual practice regarding representation agreements (*e.g.*, retainer agreements; engagement letters).  We suggest that you address the scope of your legal services, legal fees, and costs and expenses.  The scope of legal services and other terms of

representation are entirely between you and the applicant to discuss/agree. In *pro bono* and reduced fee cases, it is helpful to state that your legal services are provided at no cost or at a reduced rate.

It is also helpful to specify the applicant's responsibility, per your agreement, for paying costs and expenses. (In *pro bono* and other cases in which it may be difficult for the client to pay costs, you may want to consider applying for a waiver of court fees, if possible.) Please note that the Hague Convention (Article 26) and ICARA (22 U.S.C. 9007(b)(3)) provide for the ability to recover necessary expenses, including court costs and legal fees, in specified actions brought under the Convention. Fees and expenses also may be recovered in custody/visitation enforcement proceedings brought under state law (*see, e.g.,* UCCJEA § 312).

Our most recent records indicate that the child is residing at 3810 Skyline Drive, Knoxville, Tennessee 37914. Please confirm this information with country officer Elizabeth Wagner before service of process is attempted. Her contact information is set forth below.

Ms. Wagner will be in touch with you periodically to inquire about the status of the case so that the Central Authority in Honduras can be informed of its progress. Please notify her when the case is filed in court so that a letter can be sent to the presiding judge, per our standard procedures, explaining the obligations of courts in the United States under the Hague Convention. Consistent with Article 11, which requires courts to act expeditiously in return cases, Hague Convention return proceedings should be commenced promptly. We ask that you let Ms. Wagner know if for any reason you are unable to bring the petition to court within the next few weeks. Should your client be interested in mediation, Ms. Wagner can provide information about a pilot mediation project that may be able to assist. You would continue as counsel.

Finally, please be advised that attorneys for applicants in no way act as agents of the Department of State. You are therefore requested to neither state nor imply that you represent or are retained by the Department of State. Terms of representation and decisions regarding the objectives and means of representation are matters between attorney and client only. Technical assistance provided by the Department of State or private contractor should not be construed as endorsement of any action taken in the course of your representation.

Should you have any questions, please feel free to contact Ms. Wagner or me. She can be reached at WagnerE@state.gov and 202-485-6341. My contact information is below. Thanks in advance for your time and effort.

Sincerely,

*Patricia M. Hoff*

Patricia M. Hoff
Legal Assistance Coordinator
United States Department of State
Bureau of Consular Affairs
U.S. Central Authority for the Hague Convention on the Civil Aspects of International Child Abduction
202-485-6124
hoffpm@state.gov; hagueconventionattorneynetwork@state.gov
*Symtech contractor*

**EXHIBIT C**



**REPÚBLICA DE HONDURAS**
**REGISTRO NACIONAL DE LAS PERSONAS**
**REGISTRO CIVIL MUNICIPAL**

**EXHIBIT C**

Nº 44582310

# CERTIFICACION DE ACTA DE NACIMIENTO

El infrascrito Registrador Civil Municipal CERTIFICA que en el Archivo de nacimientos que se tiene en esta oficina; se encuentra

el acta de nacimiento número: `1 8 0 4` - `2 0 1 4` - `0 0 0 4 2`   ubicada en el folio __043__ del tomo __01430__
*Número de Identidad*

del Año __2014__ y que pertenece a:

**a)** _GUARDADO_
*Primer Apellido*

**b)** _VELASQUEZ_
*Segundo Apellido*

**c)** _NATHALY ABIGAIL_
*Nombre*

SEXO F ☒  M ☐

y cuya información es la siguiente:

1.) Lugar, fecha y orden de nacimiento

**a)** _EL PROGRESO_
Municipio

**b)** _YORO_
Departamento

**c)** _HONDURAS_
País

**d)** _CATORCE_
Día

**e)** _NOVIEMBRE_
Mes

**f)** _2013_
Año

2.) Apellidos, nombre y nacionalidad del padre:

**a)** _GUARDADO_
*Primer Apellido*

**b)** _ORELLANA_
*Segundo Apellido*

**c)** _OSMIN MANUEL_
*Nombre*

**d)** _HONDUREÑA_
Nacionalidad

3.) Apellidos, nombre y nacionalidad de la madre:

**a)** _VELASQUEZ_
*Primer Apellido*

**b)** _CARTAGENA_
*Segundo Apellido*

**c)** _FIAMA MAGDALENA_
*Nombre*

**d)** _HONDUREÑA_
Nacionalidad

4.) Notas marginales autorizadas:

NINGUNA

Extendida en   _EL PROGRESO_
Municipio

_YORO_
Departamento

a los:   _DOCE_

_OCTUBRE_

del DOS MIL   _QUINCE_

*Firma y Sello del Registrador Civil Municipal*

pvVd5QwCkfeoWJm5Fn0nRaoHyfwimnJQ$OxrjUlOvGoUJx9E9bFB8ja1XkreWqcVAuu

**EXHIBIT C**



REPUBLIC OF HONDURAS
NATIONAL REGISTER OF PERSONS
MUNICIPAL CIVIL REGISTRY
CERTIFICATION OF BIRTH

The Municipal Civil Regidor undersigned, certify that in the Archives of births has in this office; is the birth certificate number: 1 8 0 4 -2 0 1 4 -0 0 0 1 4 2  Located at page 043 of Volume 01430 of the Year 2014 and belonging to:

a) **GUARDADO**                                 **VELASQUEZ**

     First Last                                          Last

                                                          SEX F     M   ☒   ☐

c)                        **NATHALY ABIGAIL**

Name

and whose information is:

||||||||||||||||||||||||||||||||||||||||||||||||||||||

1.) Place, date and birth order

a )    **EL PROGRESO**        b )    **YORO**            c)    **HONDURAN**

          city                              state                        country

d      **FOURTEEN**          e)    **NOVEMBER**     f)         **2014**

          day                              moth                          year

2.) Surname, name and nationality of the father.

a)            **GUARDADO**                              **ORELLANA**

                 First Last                                   Last

c )       **OSMIN MANUEL**               d)        **HONDURAN**

                   Name                                 Nationality

3.) Surname, name and nationality of the mother.

a )             **VELASQUEZ**                  b)    **CARTAGENA**

                  First Last                                 Last

c)      **FIAMA MAGDALENA**            d)        **HONDURAN**

                     name

Nationality

4.) Notes marginal authorized: |||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

(07/08/2003) Reposition by omission

---

Widespread in        **El Progreso**                **YORO**

                    City                             State

To:        **TWELVE**         day of the month        **OCTOBER**

two thousand              **fifteen**                      TRANSLATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

| | |
|---|---|
| IN RE THE APPLICATION OF ) | |
| OSMIN MANUEL GUARDADO ) | |
| ORELLANA, ) | |
| ) | |
|     **Plaintiff/Petitioner,** ) | |
| ) | |
| **v.** ) | **Civil Action File No. _____** |
| ) | |
| FIAMA MAGDALENA VELASQUEZ ) | |
| CARTAGENA, ) | |
| ) | |
|     **Defendant/Respondent.** ) | |
| _____ ) | |

**AFFIDAVIT OF OSMIN MANUEL GUARDADO ORELLANA IN SUPPORT OF
VERIFIED COMPLAINT AND PETITION FOR RETURN OF CHILD**

BEFORE ME, the undersigned authority, personally appeared OSMIN MANUEL GUARDADO ORELLANA, who, being duly sworn, deposes and says:

1. I am a resident and citizen of El Progresso, Yoro, Honduras and the Petitioner/Plaintiff in the above-captioned case.

2. I am over eighteen years of age, and make this affidavit in support of the Verified Complaint and the relief requested therein.

3. I am seeking the return of my two-year-old daughter, Nathaly Abigail Guardado Velasquez ("Nathaly"), who was, without my consent or acquiescence, wrongfully removed from Honduras and brought to the United States.

4. The facts surrounding my daughter's wrongful removal are as follows.

5. I was in a relationship with Fiama Magdalena Velasquez Cartagena ("Respondent") and lived with her at my home for a period of three years.

6. During that time period, Respondent became pregnant with our daughter, Nathaly. Following Nathaly's birth, Respondent, Nathaly and I lived together at our familial residence, Colonia Lorenzo Zelaya, Aldea Las 40 El Progresso, Yoro, Honduras.

7. From birth until Nathaly's wrongful removal, I provided financial support for Nathaly and Respondent.

8.      On September 11, 2015, Respondent's sister contacted me in the afternoon and informed me that Respondent had moved to the United States with Nathaly.

9.      Shortly thereafter, Respondent contacted me from her cell phone and notified me that she had left for the United States of America with Nathaly to help provide financial assistance and support to her parents.

10.      During several phone conversations with Respondent, I requested and pleaded with her to return Nathaly to Honduras but to no avail.

11.      Respondent abducted Nathaly from Honduras without my permission.

12.      Through my conversations with Respondent and others, I learned that Respondent and Nathaly are living with Respondent's cousin in Knoxville, Tennessee.


FURTHER AFFIANT SAITH NOT.


_____
Osmin Manuel Guardado Orellana


**STATE OF YORO**                    )
                                     )          **SS.**
**CITY OF EL PROGRESSO**             )


On this ___ day of _____, 2016, before me personally appeared Osmin Manuel Guardado Orellana, to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the City and State aforesaid, the day and year first above written.

_____
Notary Public


My Commission Expires:
_____

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

EN LA APLICACIÓN DE )
OSMIN MANUEL GUARDADO )
ORELLANA, )
       )
       Demandante/Peticionario, )
       )
v. )     Acción civil archivo №. _____
       )
FIAMA MAGDALENA VELASQUEZ )
CARTAGENA, )
       )
       Acusado/demandado. )
       )

## DECLARACIÓN DE OSMIN MANUEL GUARDADO ORELLANA EN APOYO DE COMPROBADA DENUNCIA Y PETICIÓN DE RESTITUCIÓN DE MENOR

DELANTE de mí, la autoridad que suscribe, personalmente apareció OSMIN MANUEL GUARDADO ORELLANA, que está bajo juramento, quita y dice:

1. Soy residente y ciudadano de El Progreso, Yoro, Honduras y el Peticionante/Demandante en el caso mencionado arriba.

2. Tengo más de dieciocho años de edad y hago esta declaración en apoyo de la denuncia verificada y el desagravio solicitado en ella.

3. Busco el regreso de mi hija de dos años de edad, Nathaly Abigail Guardado Velásquez ("Nathaly"), que fue sin mi consentimiento o aquiescencia, injustamente removida de Honduras y traído a los Estados Unidos.

4. Los hechos que rodean la remoción injusta de mi hija son las siguientes.

5. Yo estive en una relación con Fiama Magdalena Velasquez Cartagena ("Demandada") y vivi con ella en mi casa por un período de tres años.

SLC-7914509-1

6. Durante ese período de tiempo la Demandada quedó embarazada con nuestra hija, Nathaly. Despues del nacimiento de Nathaly, la Demandada, Nathaly y yo vivimos juntos en la residencia familiar, Colonia Lorenzo Zelaya, Aldea Las 40 El Progreso, Yoro, Honduras.

7. Desde el nacimiento hasta la remoción injusta de Nathaly, proporcione apoyo financiero a Nathaly y la Demandada.

8. En la tarde de el 11 de Septiembre de 2015, la hermana de la Demandada se puso en contacto conmigo y me informó que la Demandada se había trasladado a los Estados Unidos con Nathaly.

9. Poco después, la Demandada se puso en contacto conmigo desde su teléfono celular y me notificó que ella se había ido a los Estados Unidos de América con Nathaly para poder apoyar financieramente a sus padres.

10. Durante varias conversaciones telefónicas con el demandado, yo le pidi y implore que volviera a Nathaly a Honduras pero no sirvió de nada.

11. La Demandada había secuestrado Nathaly de Honduras sin mi permiso.

12. A través de mis conversaciones con la demandada y otros, aprendí que la Demandada y Nathaly viven con el primo de la Demandada en Knoxville, Tennessee.

EL DECLARANTE NO DICE NADA MÁS.

_____
Osmin Manuel Guardado Orellana

**Estado de Yoro**
**Cuidad de El Progreso**

SLC-7914509-1

En este día 22 de 6 , 2016, antes de mi personalmente se presenta Osmin Manuel Guardado Orellana, conocido por ser la persona descrita en y que ejecutó el instrumento anterior y reconociendo que el mismo a ejecutado como su acto y acción libre.

En fe de lo cual firmo por mi mano y estampo mi sello oficial en la ciudad y el estado anterior, el día y año arriba escrito.

_____

Notario Publico

Mi comisión vence:

_____

SLC-7914509-1

  

**VALOR LPS. 500.00**
**SERIE "A"**

*Colegio de Abogados de Honduras*

*Certificado de Autenticidad*   Nº **0952919**

El Infrascrito Notario SANDRA MARLENE PINTO GUILLEN, inscrita en el colegio de Abogados de Honduras con carnet numero tres mil doscientos treinta y cinco (3235), y Exequátur numero un mil cuatrocientos treinta (1430), de la corte Suprema de Justicia despachando sus asuntos profesionales en la colonia Alameda, Edificio Hueso Gonzales 2do Nivel No.1, en Tegucigalpa, MDC; En transito por esta ciudad; CERTIFICA :Que la firma que antecede y se Refiere a un DOCUMENTO PRIVADO DE DECLARACION DE OSMIN MANUEL GUARDADO ORELLANA EN APOYO DE COMPROBADA DENUNCIA Y PETICION DE RESTITUCION DE MENOR.- ES AUTENTICA por haber sido puesta de puño y letra en mi presencia por la persona que lleva dichos nombres de lo cual Doy Fe.

El Progreso, Yoro 22 de Junio del 2016.

----------------------------------------Ultima Linea----------------------------------------



# QUE DEBE SABER DE LAS VACUNAS

**VACUNA BCG (Tuberculosis)**

La vacuna BCG produce al mes una lesión en el sitio de aplicación, que a veces presenta secreción, dejando una cicatriz a los dos meses de aplicada.

**VACUNA SABIN (ANTIPOLIOMIELITICA)**

Es una vacuna que no da ninguna reacción.

**VACUNA PENTAVALENTE DPT-Hep B-Hib**

Después de su aplicación puede producirse fiebre y/o formación de una induración en el sitio de la inyección que desaparece espontáneamente. La fiebre debe ser controlada con medios físicos (paños de agua tibia) y acetaminofén de acuerdo a indicaciones del personal de salud.

**VACUNA NEUMOCOCO**

Después de su aplicación puede producirse reacciones locales como dolor e inflamación en el sitio de la inyección y fiebre. Estas reacciones usualmente desaparecen después de 48 horas.

**VACUNA ROTAVIRUS**

Después de su aplicación se puede presentar, irritabilidad, somnolencia y trastornos gastrointestinales.

**VACUNA SARAMPIÓN RUBEOLA Y PAPERAS (SPR Y SR)**

Se puede presentar erupción en la piel similar al sarampión en 5 de cada 100 vacunados(as) y fiebre alrededor de los 5-12 días después de su aplicación.

**Td(Toxoide Tetánico y Diftérico)**

Después de su aplicación puede producirse dolor, enrojecimiento y formación de una induración en el sitio de aplicación, desapareciendo espontáneamente.

**VACUNA HEPATITIS B**

Después de su aplicación se puede presentar en algunas personas dolor en el sitio de inyección y fiebre (en menos de 6 de cada 100 vacunados.

**VACUNA DE INFLUENZA**

Después de su aplicación puede presentarse dolor, enrojecimiento e induración en el sitio de aplicación que desaparece espontáneamente, rara vez se presenta fiebre y malestar general.

**NO** se debe administrar acetaminofén al niño antes de recibir la vacuna

  

Secretaría de Salud
Programa Ampliado de Inmunizaciones (PAI)

# Carnet Nacional de Vacunación

Nombre: Antony Abdiel Lourdado

Número de Inscripción: 26-13

Fecha de Nacimiento: 14/11/13

Edad: 3m

Dirección: La no

Responsable del Niño: Roma Velasquez

Centro de Salud: vis Quadmitas

## "Por nuestras familias vacunemos hoy."

*Recuerde: es obligatorio presentar el carnet para solicitar atención médi*

---

## CONTROL DE VACUNAS

| VACUNAS | FECHA DE APLICACIONES DE DOSIS | | | | | |
|---|---|---|---|---|---|---|
| | Primera Dosis | Segunda Dosis | Tercera Dosis | Cuarta Dosis | Quinta Dosis | Refuerzo Primera Línea |
| Hepatitis B Recién Nacido | 14/11/13 | | | | | |
| BCG | 14/11/13 | | | | | |
| Sabin (VOP) Poliomielitis | 15 | 20 | 21 | | | |
| Pentavalente DPT-Hep B-Hib | | 3 | | | | |
| Neumococo | | 20 | | | | |
| Rotavirus | 14 | 3 | | | | |
| DPT(Sarampión, Rubeola y Paperas) | | | | | | |
| DPT (Difteria, Tos Ferina y Tétanos) | | | | | | |
| Hepatitis B | | | | | | |
| Td (Toxoide Tetánico y Diftérico) | | | | | | |
| Influenza | | | | | | |
| Dosis Adicional Sabin | | | | | | |
| Dosis Adicional SRP | | | | | | |
| Dosis específica | | | | | | |
| Vitamina A | | | | | | |



## SOME THINGS YOU SHOULD KNOW OF VACCINES

**VACCINE BCG (Tuberculosis)**

The BCG vaccine produces a month injury that sometimes produces secretion, leaving a scar two months applied.

**ANTIPOLIOMELITIS VACCINE (POLIO)**

SABINOR is a vaccine that gives no reaction

**Pentavalent (DPT + HB + Hib)**

After application fever and / or formation of an induration at the injection site can occur. Fever should be controlled by physical means (cloths of warm water) and / or acetaminophen according to indications of health personnel. Induration disappears spontaneously

**ANTI MEASLES VACCINE**

Mumps and rubella (MMR) and SR. It can be applied separately or combined. With measles vaccine can cause skin rash similar to measles (five out of 100 vaccinated few) and fever about five to twelve days after application. The mumps and rubella vaccine rarely given reaction.

**Ta (Tetanus and diphtheria toxoid)**

After application can cause pain, redness and induration formation at the site of application, disappearing spontaneously.

vaccine against hepatitis
After application may occur in some people pain in the injection site and fever
(in less than six of every 100 vaccinated).

Health Ministry
Expande Program
(EPI)

### National identity card Vaccination

Name _Nataly Abigail Guardado_
Date of birth _14/11/13_
Age _2 m_
Address _La 40_

Responsible _Fiama Velasquez_
Clinic _C.S. Guaymtos_

### BY WE VACCINATE OUR CHILDREN TODAY
*"Prevention is health"*

---

## GUIDE VACCINATION

(left detailed schedule table — illegible)

## CONTROL OF VACCINES

| VACCINES | DATE of dose | | | | | | |
|---|---|---|---|---|---|---|---|
| BCG (Tuberculosis) | 14/11/13 | | | | | | |
| Sabin (Polio) | 15 | 28/3 | 21/ | | | | |
| Pentavalent (DPT+HB+Hib) | | 14 | /05 | | | | |
| DPT (Diphtheria, Tsetanus and tetanus) | | 21 May 2015 | | | | | |
| SRP (measles, rubella and mumps) | 5/9/14 | | | | | | |
| Td (diphtheria and tetanus) | | | | | | | |
| ANTIHEPATITIS B | | | | | | | |
| SR (measles, rubella) | | | | | | | |
| * Dose additional Sabin | | | | | | | |
| * Dose additional SR | | | | | | | |
| Other, specify | | | | | | | |
| V Samelin fo | 3/6/14 | 15/12/14 | | | | | |

* In NID

NOMBRE: Nataly Abigail Guardado Velasquez

DIRECCIÓN: Aldea las 40          TEL. 9844-4458

FECHA DE NACIMIENTO: 14/11/2013   LUGAR DE NACIMIENTO: El Progreso, Yoro

NOMBRE DEL PADRE: Osmin Guardado   NOMBRE DE LA MADRE: Fiama Velasquez

## ANTECEDENTES

PARTO: _____   COMPLICACIÓN: _____

PESO AL NACER: _____   APP _____

Por medio de la presente hago costar que la niña Nataly Abigail Guardado Velasquez con fecha de nacimiento 14/11/2013y que vive en la aldea las 40 que pertenece a la ciudad de el progreso yoro, quien es hija de Osmin Guardado ( el padre ) y de Fiama Velasquez ( la madre. ) Han tenido en control pediátrico a Nataly desde el 21/06/2014 a quien hemos visto por diferentes patologías gastrointestinales y cuadros respiratorios altos.

Y para los fines que al interesado convenga, extiendo la presente en la Ciudad de El Progreso Yoro, Honduras C.A. a los 03/05/2016.

Dr. José Roger Carvajal Mejía.

Pediatra

# clinical history

**Name:** Nataly Abigail Guardado Velasquez

**Address :** Aldea la 40          **Phone:** 9844-4458

**Birthdate:** 14/11/2013          **Place of birth:** El Progreso, Yoro.

**Father's nam:** Osmin Guardado     **Mother's name:** Fiama Velasquez

## Background

Through this I note that the girl Nataly Abigail Guardado Velasquez with birth date 14.11.2013 and lives in the village 40 pertenecea the city of El Progreso, Yoro department, who is the daughter of Osmin saved ( Father) and fiama Velasquez (the Mother). They have been in control pediatrico Nataly from 21/06/2014 whom we have seen various gastrointestinal pathologies and upper respiratory symptoms.

And for the purposes that the person concerned agrees, extend this in the city of El Progreso, Yoro, Honduras C.A. the 03/05/2016.



Dr. José Roger Carvajal Mejía.

Pediatra



Iglesia Evangelica Menonita Honduras
Tabernáculo Parusía
La 40, El Progreso Yoro, Honduras C.A
CEL. 99587013

## CONSTANCIA

El suscrito pastor de iglesia evangelica menonita Hondureña, por este medio hace constar
que el señor Osmin Manuel Guardado Orellana con cedula de identidad N 1804-1993-
03612 es el padre biológico de la niña Nathaly Abigail Guardado Velasquez con numero de
identidad 1804-2014-00042 de quien doy fe de que la niña residía en casa de su padre en
aldea la 40 EL progreso Yoro, y de dar un buen trato a su hija y su madre, cubriendo todas
la necesidades y para los fines que convenga al interesado firmo la presente a los. 20 dias
de noviembre 2015.

Firma del pastor



Honduran Evangelical Mennonite Church
Parusia The Tabernacle
40, El Progreso Yoro, Honduras CA
CEL. 99587013

## CONSTANCY

The undersigned pastor Honduran Mennonite Evangelical Church, hereby certifies that Mr.
Osmin Manuel Guardado Orellana 1804-1993-03612 identity card No, is the biological father
of the child Nathaly Abigail Guardado Velasquez with identity Saved 1804-2014 -00,042 of
whom attest that the child lived in her father's house in village The 40 El Progreso Yoro, and
give good treatment to his daughter and her mother, covering all your needs and for the
purposes agreed by the interested signed to the present. November 20, 2015.

Shepherd signature



EXHIBIT 32





**EXHIBIT**

EXHIBIT H

# REPÚBLICA DE HONDURAS
## SECRETARÍA DE SEGURIDAD
### D.N.I.C.

## RECEPCIÓN DE DENUNCIAS

DELITO: RIESGO SOCIAL

DENUNCIA: 2721-2015

DENUNCIANTE: OSMIN MANUEL GUARDADO ORELLANA CON IDENTIDAD 1804-1993-03612 DE 22 AÑOS DE EDAD, DE OFICIO JORNALERO, RESIDENTE EN COL. ALDEA LA CUARENTA EN LA COLONIA LORENZO ZELAYA DOS CUADRAS FRENTE A LA IGLESIA MENONITA. TEL: 9517-52-21.

LUGAR DE LOS HECHOS. EN COL. ALDEA LA CUARENTA EN LA COLONIA LORENZO ZELAYA DOS CUADRAS FRENTE A LA IGLESIA MENONITA.

OFENDIDO: NATALY ABIGAIL GAURDADO VELASQUEZ con identidad número 1804-2014-00042

SOSPECHOSO: FIAMA MAGDALENA VELASQUEZ CARTAGENA Identidad 1804-203-02141, originario de la aldea la cuarenta, estado civil unión libre, de 23 años de edad.

## NARRACIÓN DE HECHOS

MANIFIESTA el denunciante que tuvo una relacion sentimental con la señora FIAMA MAGADALENA desde hace tres años y durante la relacion procrearon una hija de nombre NATALY ABIGAIL GAURDADO VELASQUEZ, quien tiene un año y diez meses, resulta que el dia viernes 11 de septiembre del año en curso como a eso de las dos de la tarde una hermana de MAGDALENA le informo que ella se habia ido de la casa con destino a los estados unidos mojado por lo que solicito al ministerio publico que me ayuden ya que se lleva ela niña poniendole en peligro la vida de la menor.

DADO EN LA CIUDAD DE PROGRESO DE YORO A LOS 12 DIAS DEL MES DE SEPTIEMBRE DEL AÑO 2015, SIENDO LAS 11:23 HORAS

DENUNCIANTE

RECEPTOR

Case 3:16-cv-00444-CCS   Document 1   07/13/16   Page 37 of 60   PageID #: 37

**D.N.I.C**

**Reception of Complaints**

**CRIME. SOCIAL RISK**

**COMPLAINT: 2221-2015**

**Complainant:** OSMIN MANUEL GUARDADO ORELLANA 1804-1993-03612 IDENTITY OF 23 YEARS OF OFFICE DAY LABORER VILLAGE RESIDENT IN THE COLONY THE FORTY TWO BLOCKS Zelaya LORENZO FROM THE MENNONITE CHURCH TEL. 9571-5221.

MADE IN PLACE OF THE FORTY COL VILLAGE IN THE COLONY LORENZO TWO BLOCKS FROM Zelaya Mennonite Church.

**OFFENDED:** NATALY ABIGAIL GUARDADO VELASQUEZ with identity number 1804-2014-00042.

**SUSPECT**: FIAMA MAGDALENA VELASQUEZ CARTAGENA. 1804-1992-02141 identity of the village's original forty, marital cohabitation, 23 years old.

<u>NARRATIVE OF EVENTS</u>

EXPRESSES the complainant who had an affair with Mrs. FIAMA MAGDALENA VELASQUEZ CARTAGENA for three years and during the relationship fathered a daughter named NATALY ABIGAIL GUARDADO VELASQUEZ, who has one year and 10 months of age is that on Friday, September 11, year and at about two in the afternoon, a sister FIAMA MAGDALENA, informed him that she had left home bound for the United States of wet so he asked the public prosecutor to help me and that was putting endanger the life of the child.

Given in the city of El Progreso, Yoro OF THE 12 DAY OF SEPTEMBER 2015 at 11:25 am BEING.

**EXHIBIT I**

EXHIBIT I



Expediente No. 0501-2015-00431

San Pedro Sula, 03 de Agosto del 2015

Señor Comisionado
Hugo Velásquez Moreno
Jefe de Policía Internacional
INTERPOL



Por este medio la Dirección de Niñez, Adolescencia y Familia, a través de su Programa de Protección y Restitución de Derechos, le solicita se le brinde la colaboración pertinente al **señor OSMIN MANUEL GUARDADO ORELLANA**, con Cedula de Identidad No. 1804-1993-03612, quien es Padre y representante legal de su menor hija **NATHALY ABIGAIL GUARDADO VELASQUEZ**, con Certificación de Acta de Nacimiento **No. 1804-2004-00042**, de dos años y diez meses, que ha denunciado ante nuestra oficina, que la madre de su menor hija la señora **FIAMA MAGADALENA VELASQUEZ CARTAGENA**, saco de manera ilegal y sin suí autorización a su hija, para llevársela a Estados Unidos, KNOXVILLE TENESEE, y él no está de acuerdo con tal situación, por ser la niña aun una bebe, por lo quiere emitir una alerta migratoria para evitar que la niña sufra en ese camino.

**Junto con la presente nota se adjunta:**

1.- Copia de la Cedula de Identidad del denunciante

2.-Copia de la Inscripción de Nacimiento de la Niña

3.- Fotografías de la madre y de la niña

4.- Copia de la tarjeta de vacuna

5.- Copia de la Denuncia presentada ante la DNIC

Por lo que le solicito que proceda a instruir las actuaciones pertinentes para impedir la salida del país de la niña y en caso de que ya hubiere salido se emitan las alertas correspondientes a nivel internacional, para que la niña sea repatriada a su país de origen, en el caso de ir en ruta migratoria.

**EXHIBIT I**



Lo anterior en vista de que la Dirección de Niñez, Adolescencia y Familia, por medio de su programa de protección y vulneración de derechos, está realizando las diligencias necesarias para la protección de las niñas.

Seguro de su atención a la presente, me suscribo de usted,

Atentamente,

Santa Gómez Ortéz
**Protección y Restitución de Derechos**
**Dirección de Niñez, Adolescencia y Familia**

**EXHIBIT I**



Record#**0501-2015-00431**



San Pedro Sula. August 3, 2015

Mr. Commissioner
Hugo Velasquez Moreno
Head of International Police
INTERPOL

By this means the Department of Children, Youth and Family,
through the Agenda for Protection and Restitution of Rights, it is
requested provide relevant support **Mr. Osmin MANUEL SAVED**
Orellana, with identity card **No. 1804-1993-03612**, who is Father
and legal representative of his youngest daughter **NATHALY
ABIGAIL GUARDADO VELASQUEZ**, with certification of Birth
Certificate **No. 1804-2004-00042**, two years and ten months, who
complained to Our office, the mother of his youngest daughter Mrs.
**FIAMA MAGDALENA VELASQUEZ CARTAGENA**, sack
illegally without Its okay to her daughter, to take her to the United
States, **KNOXVILLE TENESEE**, and he does not agree with this
situation, as the girl still A baby, so you issue an alert immigration
to prevent the Child suffer in that way.

Along with this note attached:

1. A copy of the identity card of the complainant

2. Copy of Registration of Birth of Girls

3. Photo Fix mother and child

4. Copy of vaccination card

5. copy of the complaint filed with the DNLC

So I request to proceed to instruct the relevant proceedings
to prevent the departure of the child and in case any longer

**EXHIBIT I**

This given that the Department of Children, Youth and Family, through its program of protection and rights violations, it is underway to protect girls proceedings.

Sure your attention to this, I sign you,

Sincerely,

Santa Gómez Ortéz
Protección y Restitución de Derechos
Dirección de Niñez, Adolescencia y Familia

R.R. DONNELLEY DE HONDURAS, S.A. DE C.V., TELE.: 2221-3300, 2896-0080, ICR,(52*17) * 50052-04 * 1-505402



## REPÚBLICA DE HONDURAS
### PODER JUDICIAL

# CONSTANCIA
#### USOS VARIOS

**No. 294604**

**VALOR: Lps. 150.00**

**VALOR: Lps. 150,00**

| | |
|---|---|
| NOMBRES: | OSMIN MANUEL |
| APELLIDOS: | GUARDADO ORELLANA |
| DOCUMENTO DE IDENTIDAD: | 1804199303612 |
| FECHA DE NACIMIENTO: | 30/08/1993 |
| SEXO: | Masculino |
| DOMICILIO: | COLONIA LORENZO ZELAYA, FRENTE A LA IGLESIA MENONITA, ALDEA LAS 40, EL PROGRESO, DEPARTAMENTO DE YORO. |
| | |
| EMITIDO: | MARTES, 17 DE NOVIEMBRE DE 2015 |

## VIGENCIA POR SEIS (6) MESES

El Infrascrito Titular de la Unidad de Antecedentes Penales, hace constar que a la Fecha de emisión de la presente Constancia y conforme a los Registros del Sistema de Antecedentes Penales:

### *** NO TIENE ANTECEDENTES PENALES ***





**NORMA LIZETH CASCO RODAS**
**COORDINADORA**
**UNIDAD DE ANTECEDENTES PENALES**
**\* VALIDO A NIVEL NACIONAL \***



COMPRUEBE LA AUTENTICIDAD DE ESTE DOCUMENTO, VERIFICANDO LAS SIGUIENTES MEDIDAS DE SEGURIDAD.
\* PAPEL DE SEGURIDAD CON MARCA DE AGUA, VERIFICABLE A CONTRA LUZ, APARECERÁ UNA M ESPARCIDA EN TODO EL PAPEL.
\* LOGOTIPOS EN TINTA INVISIBLE, VERIFICABLES CON LUZ ULTRAVIOLETA.
\* FIBRILLAS DE SEGURIDAD EN LAS DOS CARAS DE LA CONSTANCIA CON EFECTOS BAJO LUZ ULTRAVIOLETA.

# REPUBLIC OF HONDURAS

## JUDICIARY

### CONSTANCY USES VARIES

No. 294 604 HONDURAS
VALUE: Lps. Osmin 150.00

| | |
|---|---|
| NAMES : | OSMIN  MANUEL |
| LAST NAME: | GUARDADO ORELLANA |
| IDENTITY: | 1804199303612 |
| DATE OF BIRTH | 30/08/1993 |
| SEX : | Male |
| ADDRESS: | COLONIA Lorenzo Zelaya ALA MENNONITE FRONT, THE VILLAGE 40 PROGRESS. DEPARTMENT ISSUED |

TUESDAY, 17 NOVEMBER 2015

## EFFECTIVE FOR SIX (6) MONTHS

nfrascrito Holder Criminal Unit, notes that issuance of the Certificate and subject to Criminal Date: present system logs Background

## *** NO It has a criminal record

---

**TRANSLATION**

**Convención de la Haya sobre los Aspectos Civiles de la Sustracción Internacional de Menores**

| Número de NNA ☐ | | Restitución Internaciona ☒ | Derecho de Visita ☐ |
|---|---|---|---|
| *Number of minors* | | *International Return* | *Visit Regimen* |

| 1.- Datos del NNA *Information about the minor* |
|---|

| I) Nombre completo *Name* |
|---|

| NATHALY ABIGAIL GUARDADO VELASQUEZ |
|---|

| Fecha de Nacimiento *Birth* | Nacionalidad *Nacionality* | Edad *Age* | Lugar de Nacimiento *Place of Birth* | Fecha en que cumpliría 16 años de edad *Date she will turn 16* |
|---|---|---|---|---|
| 14/11/2013 | Hodureña | 2 | El Progreson Yoro | 14 NOVIEMBRE 2029 |

| Dirección en el que residía antes de la sustracción | Número de Pasaporte o Identidad *Identification or Passport Number* |
|---|---|
| COLONIA LORENZO ZELAYA, ALDEA LAS 40 EL PROGRESO YORO | |

| Dirección y Número de Teléfono actual (si se sabe) *Current address and phone number (if known)* |
|---|
| 9015 TEN MILE RD APT #171 NOXVILLE TN 37923<br>001-423-277-2520 |

| Peso *Weight* | Altura *Height* | Color de Ojos *Eye Color* | Color de Cabello *Hair Color* |
|---|---|---|---|
| 28 LB | 75 C.M | CAFE | NEGRO |

| Cicatrices o marcas de Nacimiento *Distinctive Marks* |
|---|
| |

| Nombre Padre (Si no figura en Sección 2 o 3) *Father's* | Nombre Madre (Si no figura en Sección 2 o 3) *Mother's Name* |
|---|---|
| GUARDADO ORELLANA OSMIN MANUEL | VELASQUEZ CARTAGENA FIAMA MAGDALENA |

| 2.- Solicitante |
|---|

| Nombre completo |
|---|
| GUARDADO ORELLANA OSMIN MANUEL |

| Parentesco con el NNA | Nacionalidad *Nacionality* | Fecha de Nacimiento *Birth date* | Ocupación *Occupation* |
|---|---|---|---|
| PADRE | HONDUREÑO | 30/08/1993 | AGRICULTOR |

| Dirección | Teléfono *Phone Number* |
|---|---|
| COLONIA LORENZO ZELAYA, ALDEA LAS 40 EL PROGRESO YORO | 504-9545-6514<br>504-9517-5221 |

| Correo Electrónico | Número de Identidad *Identification Number* |
|---|---|
| guardado20@outlook.es | 1804-1993-03612 |

| Otra Referencia *Other* |
|---|

| Correo Electrónico *E-mail* | Número de *Identification Number* |
|---|---|
| | |

| 3.- Sustractor *Abductor* |
|---|
| Nombre Completo *Name* |
| VELASQUEZ CARTAGENA FIAMA  MAGDALENA |

| Parentesco con el NNA *Relationship with the minor* | Nacionalidad *Nacionality* | Fecha de Nacimiento *Birth date* | Ocupación *Occupation* |
|---|---|---|---|
| ·MADRE | HODUREÑA | 21/10/1991 | ENFERMERA |

| Dirección *Address* | Teléfono *Phone Number* |
|---|---|
| 9015 TEN MILE  RD APT #171 NOXVILLE TN 37923 | 001-423-277-2520 |

| Correo Electrónico *E-mail* | Número de Identidad *Identification Number* |
|---|---|
| | 1804-2003 02141 |

| 4.- Lugar, fecha y circunstancias de la retención o traslado *Date, place and circumstances of abduction* |
|---|

Yo Osmin Manuel Guardado Orellana doy fe que desde 2013 la persona sabe Fiama Magdalena Velásquez en que nos involucramos en una relación de tres años en ese momento el progresamos una hija llamada nathaly Abigail Guardado Velásquez con 2 años de edad. Dijo que el viernes 11 de septiembre 2015 a las 7:00 am la señora Fiama Magdalena Velásquez salió de casa sin la autorización de llevar a  mi  hija Nathaly Abigail Guardado Velásquez  de la dirección ilegalmente desconocida y fue informado por una hermana de la señora Fiama a las 2 de la tarde del mismo día que ella  tenía previsto entrar ilegalmente a los Estados Unidos de América

I Osmin Manuel Guardado Orellana give faith, since 2013 Fiama Magdalena Velasquez and I where in a relationship, in which relationship we had a girl named Nathaly Abigail Guardado Velasquez, 2 years old. On september 11, 2015 at 7 am. Mrs. Fiama Magdalena Velasquez took our daughter without my permission, and a sister of Fiama inform me that she had plans to go to United States at 2 pm.

| 5.- Hechos y aspectos jurídicos que justifican la Solicitud *Legal Aspects that justify the request* |
|---|

La Denunica ante las autoridadecon de la DNIC con el número 2721-2015 por  riesgo social y una alerta  inmigración de la menor con registro # 0501-2015 00431.

A complaint made at DNIC with code 2721-2015, a yellow alert with number 0501-2015-00431

Documentos que se adjuntan          *Documents attached*

☐ Disposición jurídica que justificaba la residencia habitual del NNA previo al  traslado
*Legal provisions which justifies the minor´s habitual residence before abduction*

☐ Acuerdo Jurídicamente vinculante
*Legal Agreement*

☐ Acta de Matrimonio (si corresponde)
*Marriage Certificate*

☐ Acta de Nacimiento del NNA (obligatoria)
*Minor´s Birth Certificate*

☐ Copia de Tarjeta de Identidad Solicitante
*Petitioner´s identity card copy*

☐ Fotografías recientes de NNA

☐ Copia de Tarjeta de Identidad de sustractor

7.- Otras personas que tienen más información sobre el paradero del NNA
*Other persons that may that may have more information on the whereabout of the minor*

8.- Otra Información pertinente *Other information*

| Firma del Solicitante *Signature* | Fecha de Solicitud *Request date* |
|---|---|
| | 01/12/2015 |

**EXHIBIT L**



# Congreso Nacional De Honduras

EXHIBIT L



### TITULO I

### DE LA ORGANIZACION DE LA FAMILIA

### CAPITULO UNICO

### DE LAS DISPOSICIONES GENERALES

Articulo º 1

El presente Código determina las relaciones jurídicas entre personas unidas por vínculos de parentesco y las instituciones relacionadas con la familia.

Articulo º 2

Es deber del Estado proteger la familia y las instituciones vinculadas a ella, así como el de garantizar la igualdad jurídica de los cónyuges y de los hijos entre sí.

Articulo º 3

Las disposiciones contenidas en el presente Código son de orden público y se aplicarán preferentemente a cualesquiera otras disposiciones legales sobre la materia.

Articulo º 4

Para los efectos de constitución de la familia, la Ley reconoce el matrimonio civil y la unión de hecho, en relación con los menores, la adopción se hará de conformidad con lo que determina el presente Código.

Articulo º 5

Créanse los Tribunales de Familia, con jurisdicción privativa para conocer en todos los asuntos relativos a este Código.

Articulo º 6

La aplicación, interpretación y reglamentación de este Código deberá inspirarse en la unidad y el fortalecimiento de la familia, el interés de los hijos y de los menores, la igualdad de derechos y obligaciones de los cónyuges, así como en los otros principios fundamentales del Derecho de Familia.

En los casos no previstos en este Código se aplicarán los principios generales de derecho, las normas establecidas en los convenios o tratados internacionales, debidamente aprobados y las disposiciones del Código Civil, Código de Procedimientos en materia civil, Ley del Registro Nacional de las Personas y demás leyes que tengan relación directa con el Código de Familia.

Articulo º 7

**EXHIBIT L**

CAPÍTULO III

DE LA INVESTIGACIÓN Y PRESUNCIÓN DE LA PATERNIDAD

RECONOCIMIENTO

Articulo º 106

Se autoriza la investigación de la paternidad como el procedimiento apropiado para identificar y concretar la individualidad del padre, de la madre o de ambos, con relación a la persona de determinado hijo.

9;
9;

El derecho para solicitar la investigación de la paternidad corresponde al hijo y a sus descendientes, así como al padre o madre que lo hubiere reconocido.

9;

Este derecho es imprescriptible.

9;

La sentencia en que se establezca la paternidad deberá ser inscrita por el Registrador Civil.

Articulo º 107

Se presumirá que son hijos de las personas unidas en matrimonio:

1) Los nacidos durante la vida matrimonial;

2) Los nacidos dentro de los trescientos días siguientes a la fecha de la extinción del vínculo matrimonial, si la madre no hubiere contraído nuevas nupcias; y

3) Las presunciones establecidas en este Artículo se entienden sin perjuicio de lo dispuesto en el Artículo 21 numeral 2.

Articulo º 108

Se presume la paternidad:

1) Cuando pueda inferirse de la declaración del padre, formulada en escrito indubitado;

2) En los casos de sentencia condenatoria por violación, estupro o rapto cuando la fecha del hecho punible concuerde con la época de la concepción; y

**EXHIBIT L**

3) Cuando haya habido posesión notoria del estado de hijo demostrado por el trato personal y social hacia la madre durante el embarazo y el parto y comprobado por hechos fidedignos.

Artículo º 109

La posesión notoria del estado de hijo consiste en que sus padres lo haya tratado como tal, dándole o permitiéndole llevar sus apellidos, proveyéndole a su asistencia, educación y mantenimiento de un modo competente y presentándolo en ese carácter a la sociedad y que ésta lo haya reputado y reconocido como hijo de tales padres durante un tiempo no menor de un año.

Artículo º 110

Pueden ser reconocidos por sus padres, todos los hijos habidos fuera de matrimonio o de la unión de hecho. Dicho reconocimiento puede hacerse: Al asentarse la correspondiente partida de nacimiento en el Registro Civil; por Escritura Pública o por acto testamentario.

Artículo º 111

Puede hacerse declaración en Instrumento Público Notarial del reconocimiento del hijo que está por nacer, pero ésta producirá efectos después del nacimiento y una vez anotada en el Registro Civil. Igualmente, puede ser reconocido el hijo que hubiere fallecido.

## CAPÍTULO IV

## DE LA PRUEBA DE LA PATERNIDAD

Artículo º 112

La paternidad es prueba por el acta de nacimiento o por reconocimiento inscrito por el Registrador Civil en que conste la declaración del respectivo padre.

Artículo º 113

Si con motivo de la acción de investigación de paternidad o de reconocimiento forzoso, se declarare ésta, deberá inscribirse la sentencia correspondiente por el Registrador Civil, colocando la respectiva nota marginal en la partida de nacimiento del hijo a favor de quien se hubiere dictado la sentencia.

## CAPÍTULO V

## DE LA IMPUGANCIÓN

Artículo º 114

La inscripción del nacimiento del hijo, hecha conforme a lo establecido en el Artículo 102, podrá ser impugnada por el cónyuge que no hubiere concurrido al acto. La impugnación sólo podrá fundarse en la imposibilidad de los cónyuges para haber procreado el hijo.

Artículo º 115

La demanda para impugnar la paternidad deberá entablarse dentro del primer año, contando desde la fecha del nacimiento del presunto hijo o desde aquella en que el interesado tuvo noticia del hecho.

**EXHIBIT L**

Articulo º 181

La adopción no surtirá efectos entre el adoptante o adoptantes y el adoptado, ni respecto a terceros, sino hasta después de practicada, su inscripción por el Registrador Civil respectivo.

Articulo º 182

El adoptante o adoptantes en el ejercicio de la patria potestad sobre el adoptado, deberán en la escritura de adopción a que se refiere el presente Código hacer inventario de los bienes y deudas del adoptado; o, si carece de ello, se dejará constancia de tal hecho. La omisión de dicho requisito hará solidariamente responsables a los adoptantes de todo perjuicio que se irrogare al adoptado. Habiendo bienes deberán ser tasados judicialmente y el adoptante o adoptantes deberán constituir garantías suficientes para responder de los mismos. La cuantía y naturaleza de la caución será determinada por el Juez, oyendo a la persona de quien presunto adoptado depende.

Articulo º 183

Los créditos que tenga el adoptado contra el adoptante o adoptantes, originados por la administración de sus bienes, se considerarán incluidos en el número cuatro del Artículo 2256 del Código Civil, y a la fecha de su creación será la de inscripción de

la adopción.

Articulo º 184

El adoptante o adoptantes podrán nombrarle guardador al adoptado, por testamento, de preferencia a los padres. Sin embargo, el

nombramiento no tendrá efecto si antes de fallecer el testador, ha expirado la adopción. El adoptante será llamado a la guarda legítima del adoptado últimamente. El adoptado será llamado a la guarda legítima del adoptante inmediatamente después de los hijos de éste. Cesará la guarda legítima desempeñada por el adoptante o adoptado, si expira la adopción.

TÍTULO V

DE LA PATRIA POTESTAD

CAPÍTULO I

DE LAS DISPOSICIONES GENERALES

Articulo º 185

La patria potestad es un conjunto de derechos y deberes que los padres tienen con respecto a la persona y a los bienes de sus hijos. Su régimen legal será de protección a los menores, impidiendo los abusos y

**EXHIBIT L**

sancionando con la pérdida o suspensión de la misma al padre o a la madre en los casos previstos por esta Ley.

Articulo º 186

La patria potestad comprende, entre otros derechos y obligaciones, el de representar legalmente al menor; ejercer su guarda y cuidado; alimentarlo, asistirlo, educarlo, y administrar sus bienes.

Se exceptúan de la administración paterna los bienes heredados legados o donados al menor, si así se dispusiere por el testador o donante de un modo expreso. En tal caso se nombrará un curador especial.

El hijo menor autorizado por la Ley para trabajar administrará y dispondrá, como si fuera mayor de edad, de los bienes que adquiera con su trabajo o empleo público.

Articulo º 187

El ejercicio de la patria potestad corresponde a ambos padres conjuntamente. Sin embargo, la ejercerá uno solo de éllos cuando se lo confiera por resolución judicial o el otro estuviera en imposibilidad para ejercerla. En estos casos el domicilio del menor será el

del padre que la ejerza.

Cuando hubiere desacuerdo entre el padre y la madre en el ejercicio de la patria potestad, el tribunal competente resolverá lo que más convenga al bienestar del menor.

El Juez podrá oír dictámenes de expertos cuando lo creyere conveniente. Los profesionales o personal técnico de organismos o dependencias estatales, están obligados a asesorar gratuitamente al Juez cuando éste solicitare su opinión.

Articulo º 188

Si los padres fueren menores de edad, la administración de los bienes de los hijos será ejercitada por la persona que tuviere la patria potestad o la tutela sobre el padre.

Articulo º 189

La patria potestad sobre el hijo adoptivo la ejercerá únicamente la persona o personas que lo hayan adoptado.

Articulo º 190

Los padres y los hijos se deben respeto y consideración mutuos. Los hijos sujetos a patria potestad deben obediencia a sus padres.

Articulo º 191

Los padres están facultados para reprender y corregir adecuada y moderadamente a los hijos bajo su patria potestad.

EXHIBIT L

Articulo º 192

Los padres no pueden enajenar ni gravar los bienes de los hijos sujetos a patria potestad, ni contraer en nombre de ellos obligaciones que excedan los límites de una normal administración, sino por causa justificada de absoluta necesidad y utilidad en beneficio del menor, previa autorización del tribunal competente y con intervención del Ministerio Público.

En el caso de bienes muebles no será necesaria la autorización cuando su valor no excediere de mil lempiras.

Articulo º 193

Respecto a la guarda y cuidado de los hijos, se estará al acuerdo de los padres, cuando éstos no vivieren juntos.

Articulo º 194

De no mediar acuerdo de los padres sobre la guarda y cuidado de los hijos, o de ser el mismo atentatorios a los intereses materiales o morales de los hijos, la cuestión se decidirá por el tribunal competente, que se guiará para resolverla, únicamente, por lo que resulte más beneficioso para los menores. En iguales condiciones se atenderá, como regla general, a que los hijos queden al cuidado del padre en cuya compañía se haya encontrado hasta el momento de producirse el desacuerdo, prefiriendo a la padre si se hallaban en compañía de ambos, y salvo en todo caso, que razones especiales aconsejen cualquier otra solución.

Articulo º 195

En el caso del Artículo anterior, el tribunal dispondrá lo conveniente para que aquel de los padres al que no se le confiere la guarda y cuidado de los hijos menores, conserve la comunicación escrita y de palabra con ellos, regulándola con la periodicidad que el caso requiera y siempre en beneficio de los intereses de los menores. El incumplimiento de lo que se disponga a ese respecto podrá ser causa para que se modifique lo resuelto en cuanto a la guarda y cuidado, sin perjuicio de la responsabilidad de orden penal que se origine por tal conducta.

Excepcionalmente, cuando las circunstancias lo requieran, podrán adoptarse disposiciones especiales que limiten la comunicación de uno de ambos padres con el hijo, e incluso que la prohíban por cierto tiempo o indefinidamente.

Articulo º 196

Las medidas adoptadas por el tribunal sobre guarda y cuidado y régimen de comunicación, podrán ser modificadas en cualquier tiempo, cuando resulte procedente por haber variado las circunstancias de hecho que la determinaron.

Articulo º 197

El ejercicio de la patria potestad, en cuanto a la administración de los bienes del menor no obligará a los padres a rendir fianzas o caución, ni a hacer inventario solemne de los mismos, salvo que cualquiera de ellos pasare a otras nupcias.

Sin embargo los padres deberán llevar una descripción circunstanciada de los bienes desde que inicien su administración, siendo responsable a su gestión. El Juez, a instancia de los parientes o del Ministerio

EXHIBIT L

Público, podrá demandar o revelar al padre o padre, en su caso, de la administración de los bienes de los hijos, cuando se probare que se ha actuado con dolo, o negligencia inexcusable.

Articulo º 198

Los padres deben entregar a los hijos, al llegar éstos a la mayoría de edad, los bienes que les pertenezcan y rendirles cuentas de

su administración.

CAPÍTULO II

DE LA EXTINCIÓN, SUSPENDIDA Y PÉRDIDA DE LA PATRIA POTESTAD

Articulo º 199

La patria potestad se extingue:

1) Por la muerte del hijo;

2) Por arribar el hijo a la mayoría de edad;

3) Por el matrimonio del hijo;

4) Por la adaptación plena del hijo; y,

5) Por emancipación y habilitación de edad.

Articulo º 200

La patria potestad se pierde:

1) Por las costumbres depravadas o escandalosas de ambos padres o de uno de ellos, severidad excesiva e irrazonable en el trato

de los hijos, o abandono de éstos;

2) Por delito cometido por uno de los padres contra el otro o contra la persona de cualquiera de sus hijos, cuando hubiere condena

judicial;

3) Por haber sido condenado o condenados los padres, dos o más veces por delitos de orden común, si la pena excediere de tres años en cada caso;

4) Por trastorno mental de los padres o de uno de ellos declarado judicialmente; y,

5) Por sentencia firme recaída en juicio de divorcio o nulidad del matrimonio.

Articulo º 201

**EXHIBIT L**

Articulo ° 109
La posesión notoria del estado de hijo consiste en que sus padres lo haya tratado como tal, dándole o permitiéndole llevar sus apellidos, proveyéndole a su asistencia, educación y mantenimiento de un modo competente y presentándolo en ese carácter a la sociedad y que ésta lo haya reputado y reconocido como hijo de tales padres durante un tiempo no menor de un año.

**Article #109**
**The obvious status of son/daughter consists of parents who have treated them as such, giving or allowing them to carry/bear their names (last name), maintaining and educating them in a competent way and presenting them to society as such and considering and recognizing them in society as their child for a period of not less than one year.**

Articulo ° 185
La patria potestad es un conjunto de derechos y deberes que los padres tienen con respecto a la persona y a los bienes de sus hijos. Su régimen legal será de protección a los menores, impidiendo los abusos y sancionando con la pérdida o suspensión de la misma al padre o a la madre en los casos previstos por esta Ley.

**Article #185**
**Parental authority is a set of rights and duties that parents have with respect to the person and the assets of their children. Its legal rules will be the protection of minors, preventing abuses and sanctioning with the loss or suspension of these rights of the father or the mother in the cases provided for by this law.**

Articulo ° 186
La patria potestad comprende, entre otros derechos y obligaciones, el de representar legalmente al menor; ejercer su guarda y cuidado; alimentarlo, asistirlo, educarlo, y administrar sus bienes.
Se exceptúan de la administración paterna los bienes heredados legados o donados al menor, si así se dispusiere por el testador o donante de un modo expreso. En tal caso se nombrará un curador especial. El hijo menor autorizado por la Ley para trabajar administrará y dispondrá, como si fuera mayor de edad, de los bienes que adquiera con su trabajo o empleo público.

**Article # 186**
**Parental authority includes, among other rights and obligations, the legal representation of the child; exercise their guardianship and care; feed, help and educate them, and manage their property. Except from paternal administration is inherited property bequeathed or donated to the child, if so stated by the testator or donor in an express manner. In such a case, it will be a special guardian. The minor child authorized by law to work will have and manage goods purchased with his work or public employment as if he were of legal age.**

Articulo ° 187
El ejercicio de la patria potestad corresponde a ambos padres conjuntamente. Sin embargo, la ejercerá uno solo de éllos cuando se lo confiera por resolución judicial o el otro estuviera en imposibilidad para ejercerla. En estos casos el domicilio del menor será el
del padre que la ejerza. Cuando hubiere desacuerdo entre el padre y la madre en el ejercicio de la patria potestad, el tribunal competente resolverá lo que más convenga al bienestar del menor.

EXHIBIT L

El Juez podrá oír dictámenes de expertos cuando lo creyere conveniente. Los profesionales o personal técnico de organismos o dependencias estatales, están obligados a asesorar gratuitamente al Juez cuando éste solicitare su opinión.

**Article #187**
**The exercise of parental authority corresponds jointly to both parents. However, only one of them shall exercise such parental authority when it is conferred by a court ruling or it is impossible for the other parent exercise such authority. In this case, the minor shall reside with the parent who has parental authority. When there is any disagreement between the father and the mother as to the exercise of parental authority, a competent court shall decide what is in the best interest of the welfare of the minor. The judge will hear the opinions of experts when he deems it convenient. Professionals or technical staff from agencies or State agencies, are required to provide advice free of charge to the judge when he seeks their opinion.**

Articulo ° 194
De no mediar acuerdo de los padres sobre la guarda y cuidado de los hijos, o de ser el mismo atentatorios a los intereses materiales o morales de los hijos, la cuestión se decidirá por el tribunal competente, que se guiará para resolverla, únicamente, por lo que resulte más beneficioso para los menores. En iguales condiciones se atenderá, como regla general, a que los hijos queden al cuidado del padre en cuya compañía se haya encontrado hasta el momento de producirse el desacuerdo, prefiriendo a la padre si se hallaban en compañía de ambos, y salvo en todo caso, que razones especiales aconsejen cualquier otra solución.

**Article #194**
**If the parents cannot agree as to the guardian and child care, or be contrary to the material rights or moral interests of the children, the matter will be decided by a competent court, which shall be guided to resolve the matter in a manner only and most beneficial to the child. Similarly, it will generally rule that the children be left in the custody of the father in whose company they have been up to the moment of the disagreement, preferring the father if they were in the company of both except in any case where there are reasons which warrant any other solution.**