# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | |
|---|---|
| IN RE THE APPLICATION OF ) <br> OSMIN MANUEL GUARDADO ) <br> ORELLANA, ) <br>  ) <br>  Plaintiff/Petitioner, ) <br>  ) <br> v. ) <br>  ) <br> FIAMA MAGDALENA VELASQUEZ ) <br> CARTAGENA, ) <br>  ) <br>  Defendant/Respondent. ) <br> _____ ) | Civil Action File No. 3:16-CV-00444 |

**MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Petitioner Osmin Manuel Guardado Orellana ("Petitioner"), by and though counsel, respectfully submits this memorandum in support of Petitioner's Motion for Default Judgment, or in the Alternative, Motion for Summary Judgment ("Motion") in this case. This memorandum focuses on the question of whether the parties' minor child, Nathaly Abigail Guardado Velasquez (the "Child"), should be returned to Honduras to the care of Petitioner.

## I. INTRODUCTION

1. This case is before the Court on the Verified Complaint and Petition for Return of Child filed on July 13, 2016 (the "Verified Complaint") by Petitioner pursuant to the Convention on the Civil Aspects of International Child Abduction, done at the Hague Convention on October 25, 1980, T.A.I.S. No. 11,670 (the "Hague Convention" or "Convention") and its implementing legislation in the United States, the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq*. ("ICARA"). Respondent has not since filed an answer to the Verified Complaint or otherwise defended against the allegations in the Verified Complaint. The parties have entered

into two separate agreed orders, including the First Amended Agreed Order Granting Temporary Restraining Order under the Hague Convention whereby the parties agreed that the Child would remain in the jurisdiction until trial (Docket No. 17).

2. In the Verified Complaint, Petitioner asserts that Honduras is the habitual residence of the Child, age 3, and that the Respondent Fiama Magdalena Velasquez Cartagena ("Respondent") wrongfully removed the Child to and continues to wrongfully retain the Child in the State of Tennessee without Petitioner's consent.

3. Respondent has not filed an answer to the Verified Complaint, and therefore has not asserted any affirmative defenses.

## II. SUMMARY OF ARGUMENT

4. Petitioner's Motion should be granted by this Court because Respondent has failed to plead or otherwise defend against the Verified Complaint or, alternatively, because the Child was wrongfully removed from Honduras under the Hague Convention.

5. The Federal Rules of Civil Procedure require that a party file a responsive pleading within twenty-one (21) days of being served with a copy of the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A). Respondent failed to file a responsive pleading or otherwise defend the lawsuit within the requisite time period—by August 11, 2016. *Id.* at 55(b). In fact, Respondent has not filed a responsive pleading to date. Accordingly, default judgment against Respondent is warranted.

6. Alternatively, the Hague Convention provides that if a child has been wrongfully removed or retained, and a judicial proceeding is commenced within a period of time less than one year from the date of the wrongful removal or retention, the Court "shall order the return of the child forthwith." Hague Convention, Art. 12. To establish that the removal of a child from

2

Case 3:16-cv-00444-DCP   Document 21-1   Filed 12/30/16   Page 2 of 15   PageID #: 337

one county to another is wrongful, the petitioner must show that the removal or retention was in breach of rights of custody attributed to a person under the law of the State in which the child was habitually resident immediately before the removal or retention, and at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention. Hague Convention, Art. 3.

7. In a case under ICARA, the petitioner has the burden of proving by a preponderance of the evidence that the child has been wrongfully removed or retained within the meaning of the Hague Convention, and the respondent has the burden of establishing exceptions to the return. *See* 22 U.S.C. § 9003(e). Specifically, the respondent has the burden of proving exceptions under Article 13b or 20 of the Hague Convention by clear and convincing evidence and exceptions under Article 12 or 13 of the Hague Convention by a preponderance of the evidence. *Id.* at § 9003(e)(2).

8. In this case, the Child was wrongfully removed from Honduras by Respondent under the Hague Convention. Here, Petitioner was exercising custody of the Child until the Child was wrongfully removed from Honduras on September 11, 2015. Between the Child's birth and her removal, the Child resided in the custody of Petitioner and Respondent exclusively in Honduras. Respondent left Honduras in September 2015 with the Child to move to the United States without Petitioner's consent or acquiescence. Despite Petitioner's pleas, Respondent refuses to return the Child to Honduras.

9. Petitioner can show by a preponderance of the evidence that he was exercising his custodial rights in Honduras; that Honduras was the habitual residence of the Child at the time of the Child's wrongful removal; that this proceeding was commenced within one year of the wrongful removal of the Child; and that the removal and retention of the Child is wrongful

3

within the meaning of the Hague Convention as Petitioner's custody rights were breached by the removal and retention of the Child.

### III. STATEMENT OF FACTS

10. On July 13, 2016, Petitioner filed his Verified Complaint and his Motion under the Hague Convention for Entry of a Temporary Restraining Order and Scheduling of an Expedited Hearing (Docket Nos. 1-2).

11. Respondent was served on or before July 21, 2016 (Docket No. 6). A true and correct copy of the Affidavit of Jennifer Ziegenhorn is attached hereto and incorporated herein as **Exhibit A**.

12. Respondent's answer or response to the Verified Complaint was due no later than August 11, 2016. Exhibit A, ¶ 6.

13. To date, Respondent has failed to answer or respond to Petitioner's Verified Complaint. *Id.*

14. On August 25, 2016, Petitioner sent a Notice of Litigation Hold & Preservation Obligations letter to Respondent.

15. Also, Petitioner sent his First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admission ("Admissions") to Defendant Fiama Magdalena Velasquez Cartagena (collectively, the "Discovery Requests") on August 25, 2016. A true and correct copy of the Discovery Requests are attached hereto and incorporated herein as **Exhibit B**.

16. After the deadline to serve responses to the Discovery Requests expired and having received no response from Respondent or request for additional time to respond, Petitioner sent a Notice of Expiration of Discovery Response Deadline letter to Respondent

requesting a response to the Discovery Requests immediately. A true and correct copy of the Notice of Expiration of Discovery Response Deadline letter is attached hereto and incorporated herein as **Exhibit C**.

17. To date, the Respondent has neither responded nor requested additional time to respond to the Discovery Requests.

18. Petitioner asserts the following facts support entry of summary judgment.

19. Petitioner and Respondent are the parents of the Child. A true and correct copy of the Affidavit of Osmin Manuel Guardado Orellana is attached hereto and incorporated herein as **Exhibit D**.

20. Petitioner and Respondent have never been married but lived together in El Progresso, Yoro, Honduras from the Child's birth until the Child was removed from Honduras by the Respondent. Exhibit B, Admissions, No. 10; Exhibit D, ¶ 4.

21. On November 14, 2013, Respondent gave birth to the Child in El Progresso, Yoro, Honduras. Exhibit B, Admissions, No. 1; Exhibit D, ¶ 5.

22. Until the date of the Respondent's wrongful removal of the Child, Respondent and the Child lived with Petitioner at their familial residence of Colonia Lorenzo Zelaya, Aldea Las 40 El Progresso, Yoro, Honduras. Exhibit B, Admissions, Nos. 10-11; Exhibit D, ¶ 6.

23. Prior to the removal, Respondent and Petitioner had lived together for three years and the Child lived exclusively in Honduras. Exhibit D, ¶¶ 7, 9.

24. While living in Honduras, the Child received financial support, medical attention and vaccinations, attended church with her parents, and even attended a Minnie Mouse themed birthday party in her honor. Exhibit B, Admissions, Nos. 9, 12-13; Exhibit D, ¶ 10.

5

25. Petitioner learned that Respondent had wrongfully removed the Child when Petitioner received a phone call from Respondent's sister on September 11, 2015 stating that Respondent had left Honduras with the Child and was moving to the United States. Exhibit D, ¶ 12.

26. The next day Petitioner filed a complaint with the National Directorate of Criminal Investigation reporting the abduction of the Child. *Id.* at ¶ 13.

27. In the days following the Child's abduction, Respondent contacted Petitioner and notified Petitioner that she had left for the United States of America with the Child to provide financial assistance and support for her parents. *Id.* at ¶ 14.

28. During several phone conversations, Petitioner pleaded with Respondent to return the Child to Honduras but was unsuccessful. *Id.* at ¶ 15.

29. The Respondent's abduction of the Child from Honduras was done without Petitioner's consent or acquiescence. Exhibit B, Admissions, No. 6; Exhibit D, ¶ 16.

30. On August 3, 2015, Petitioner contacted the commissioner of the International Police (INTERPOL) to report the Child's abduction and to have an immigration alert issued for the Respondent and the Child. Exhibit D, ¶ 17.

31. Upon information and belief, the Child currently resides with Respondent and Respondent's boyfriend, who is Respondent's cousin, at 219 Michael Street, Knoxville, Tennessee 37914. Exhibit B, Admissions, No. 15; Exhibit D, ¶ 19.

32. On December 1, 2015, Petitioner's Request for Return of the Child was submitted to the United States Department of State through the Government of Honduras.[1] Exhibit D, ¶ 18.

### IV. LAW AND ARGUMENT

---

[1] This date differs from the date provided in the Verified Complaint. Petitioner's counsel recognized the discrepancy upon preparation of this Motion as the date was provided in the format of day, month and year rather than month, day, and year.

### A. Standard for Default Judgment

33. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A), a defendant must serve and file an answer within twenty-one (21) days after the date of service.

34. If a party fails to plead or otherwise defend and such failure is shown by affidavit, the court may hold a hearing to determine the moving party's right to default judgment when the relief sought is not for a sum certain. *See* Fed. R. Civ. P. 55(b)(1)-(2).

### B. Standard for Summary Judgment

35. In a Hague Convention case for the return of a child, the petitioner is required to demonstrate its *prima facie* case by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A).

36. The Sixth Circuit has recognized that a case brought under the Hague Convention and ICARA is appropriate for resolution upon the filing of a motion for summary judgment. *March v. Levine*, 249 F.3d 462, 474 (6th Cir. 2001) (citing to the Hague Convention for support that such cases should be fast-tracked to carry out the purpose of a quick return where such relief is warranted). Specifically, Article 2 of the Hague Convention calls for use of "the most expeditious procedures available."

37. A motion for summary judgment is proper when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

38. To show that no genuine dispute to material facts exists, the movant may allege that materials in the record support entry of summary judgment, including affidavits, documents, admissions and other materials. *See* Fed. R. Civ. P. 56(c)(1).

39. Courts have also recognized that a party's failure to timely respond to requests for admission, without moving the court for an opportunity to amend the responses and providing

sufficient justification for failing to respond, "is grounds for deeming the statements admitted and granting summary judgment on the basis of the admissions." *Goodson v. Donahoe*, No. 3:13-CV-0487, 2015 WL 8179668, at *4 (M.D. Tenn. Dec. 7, 2015); *Sowell v. Level Valley Creamery, Inc.*, No. 303-0083, 2006 WL 2548573, at *3 (M.D. Tenn. Aug. 31, 2006); Fed. R. Civ. P. 36(a)(3), (b).

**C.   Respondent Has Failed to Plead or Otherwise Defend in This Lawsuit.**

40.   Entry of default judgment is appropriate in this matter because Respondent has failed to plead or otherwise defend in this lawsuit.

41.   Petitioner's Verified Complaint was served on Respondent on or before July 21, 2016. Exhibit A, ¶ 5. Accordingly, Respondent had twenty-one (21) days, or until August 11, 2016, to plead or otherwise defend against Petitioner's Verified Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), 55(a); Exhibit A, ¶ 6.

42.   To date, Respondent has failed to plead or otherwise defend against the Verified Complaint. Exhibit A, ¶ 6.[2]

43.   As a result, Respondent is in default and entry of default judgment is appropriate in this matter.

**D.   Alternatively, There Is No Genuine Dispute of Fact that Respondent Wrongfully Removed the Child from Honduras.**

44.   In an ICARA case for the return of a child, the Petitioner has the burden of showing "by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the [Hague] Convention." 22 U.S.C. § 9003(e)(1)(A).

---

[2] Petitioner's counsel did not locate any authority suggesting that attendance at a hearing on a temporary restraining order and/or a status conference constitutes "otherwise defend[ing]" a lawsuit in satisfaction of Rule 55(a) of the Federal Rules of Civil Procedure.

8

45. The Hague Convention states that removal of a child is wrongful when the petitioner can establish that the removal or retention breached the rights of custody attributed a person under the law of the State in which the child was *habitually resident immediately before the removal or retention* and that custody rights were actually being exercised at the time of removal. Hague Convention, Art. 3.

46. The Hague Convention also only applies to children under the age of sixteen (16), and an action under the Hague Convention must be brought within one year of the date of the wrongful removal.[3] Hague Convention, Art. 4, 12.

### i. The Child Was a "Habitual Resident" of Honduras Immediately Prior to Removal.

47. The Child was a "habitual resident" of Honduras prior to the Child's removal from Honduras because the Child had a settled purpose in Honduras and cannot be considered to be habitually resident anywhere else.

48. The Hague Convention does not define "habitual residence," but the Sixth Circuit has focused primarily upon the child's acclimation and past experiences in a specific location. *See Friedrich v. Friedrich*, 983 F.2d 1396, 1400-01 (6th Cir. 1993) (citing to a British court's interpretation of "habitual residence" as requiring a factual determination on a case-by-case basis) ("<u>Friedrich I</u>"). The Sixth Circuit emphasized that the determination of the habitual residence requires a focus on the child, not the parents, and pertains primarily to "the customary residence prior to the removal." *See id.* at 1401. The *Friedrich I* court also determined that one's habitual residence can only be altered by the passage of time in a new location; however,

---

[3] The one year time period for bringing an action under the Hague Convention is not part of the Petitioner's *prima facie* case; instead, it is a defense that may be alleged by the Respondent as part of the "well-settled" affirmative defense. *Duarte v. Bardales*, 526 F.3d 563, 569 (9th Cir. 2008). Nonetheless, as stated previously, the Child was wrongfully removed from Honduras on September 11, 2015, and this lawsuit was filed on July 13, 2016. Exhibit D, ¶ 12.

9

the change in the child's location must take place before the wrongful removal. *See id.* at 1401-02 (stating that if the Court were to determine that a wrongful removal could alter the child's habitual residence, the Hague Convention would be rendered meaningless).

49. As a baseline, the United States cannot be considered to be the Child's habitual residence under *Friedrich I* because the Child never resided in the United States prior to her wrongful removal to the United States. *Friedrich*, 983 F.2d at 1401-02; *see* Exhibit B, Admissions, No. 3; Exhibit D, ¶ 9.

50. As evidenced by Petitioner's Affidavit and Respondent's admissions, the Child was born on November 14, 2013 and continuously resided in Honduras prior to her wrongful removal. Exhibit D, ¶¶ 5, 9; *see* Exhibit B, Admissions, No. 3. On September 11, 2015, the Child was removed from Honduras and began traveling with Respondent to the United States. Exhibit D, ¶ 12. The Child only resided in Honduras prior to her removal to the United States. Exhibit D, ¶ 9; *see* Exhibit B, Admissions, No. 3.

51. The Child's family and extended family, with the exception of Respondent, all reside in Honduras. Exhibit D, ¶ 6. During the Child's residence in Honduras, the Child was involved in activities in the community, including regular attendance at church. *See* Exhibit D, ¶ 10; Exhibit B, Admissions, No. 13. The Child received medical attention and vaccinations, and the Child was financially supported by Petitioner and the Child's extended family. Exhibit D, ¶ 10; Exhibit B, Admissions, Nos. 9, 12.

52. The above circumstances lead to the simple conclusion that the Child's habitual residence was Honduras. The Child resided in Honduras exclusively until the Child's mother removed her to the United States on September 11, 2015; therefore, the Court should hold that

10

the Child was a habitual resident of Honduras at the time of her removal. Exhibit D, ¶¶ 9, 12; *Friedrich*, 983 F.2d at 1402.

        ii.    **Petitioner Had Custody Rights over the Child Prior to Her Removal, and Petitioner Actually Exercised Custody of the Child Prior to Her Removal.**

53.    Petitioner had custody rights over the Child prior to her removal, and Petitioner was actually exercising his custody rights over the Child at the time of the Child's removal.

        a.    **Petitioner Had Custody Rights over the Child under Honduras Law.**

54.    Petitioner had custody rights over the Child under Honduras law.

55.    Under the Hague Convention, "rights of custody" are "rights relating to the care of the person and the child and, in particular, the right to determine the child's place of residence." Hague Convention, Art. 5(a). Custody rights over the child may arise in several ways, including by: (i) operation of law, (ii) judicial decision, (iii) administrative decision, or (iv) agreement of the parties with legal effect under the law of the country of habitual residence. *Id.* at Art. 3.

56.    The Honduras Family Code provides that parental authority belongs to both parents jointly unless a Honduras court has bestowed parental authority upon only one parent or it is impossible for one parent to exercise parental authority. Honduras Family Code, Art. 187. Parental authority includes, among other things, the right to exercise care and custody over the child. *Id.* at Art. 186.

57.    Here, Petitioner has not been stripped of his custody rights by judicial or administrative order in Honduras because no custody proceedings regarding the Child have been filed in Honduras by Respondent, Petitioner, or anyone else. Exhibit D, ¶ 8; Exhibit B, Admissions, No. 19. Accordingly, the only issue for the court to decide is whether Petitioner

11

was exercising his custody rights at the time the Child was removed from Honduras. *See* Hague Convention, Art. 3.

### b. Petitioner Exercised His Custody Rights over the Child Prior to Removal.

58. To prove wrongful retention, the petitioning party must also show that at the time of removal or retention the petitioning party was actually exercising its custody rights, either jointly or alone. *See* Hague Convention, Art. 3(b).

59. The court in *Friedrich v. Friedrich ("Friedrich II")* considered whether the petitioner property exercised custody rights. 78 F.3d 1060, 1065-66 (6th Cir. 1996). The court in *Friedrich II* stated that courts should liberally find an exercise of custodial rights when a parent seeks or seeks to keep any sort of regular contact with his or her child and attempts to maintain a regular relationship with the child. *See id.* At least one court has found that solely living at the same address and providing for the child's basic needs constituted exercise of custodial rights. *See Aldinger v. Segler*, 263 F. Supp. 2d 284, 289 (D.P.R. 2003).

60. Here, the Child lived with Petitioner at his residence at Colonia Lorenzo Zelaya, Aldea Las 40 El Progresso, Yoro, Honduras, and Petitioner provided for the Child's basic needs, including food, medication and financial support. Exhibit D, ¶¶ 6, 10-11; Exhibit B, Admissions, Nos. 9, 11-12. The Petitioner also exercised custodial rights by taking the Child to church and arranging for child care while Petitioner worked. Exhibit D, ¶ 10; Exhibit B, Admissions, No. 13.

61. Accordingly, Petitioner exercised his custodial rights prior to the Child's removal from Honduras.

### iii. The Child is under the Age of Sixteen.

62. The Hague Convention ceases to apply once the child at issue reaches the age of 16 years. Hague Convention, Art. 4. Here, the Child was born on November 14, 2013 and thus the Child is under the age of 16 years. Exhibit D, ¶ 5; Exhibit B, Admissions, No. 20. Accordingly, the Hague Convention applies to the wrongful removal of the Child.

**C.      Entitlement to Attorney's Fees**

63. Pursuant to ICARA, "[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of the title shall order the respondent to pay necessary expenses incurred by or on behalf of the petition, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate."

64. Petitioner has incurred court costs and transportation expenses which would not have been necessary absent Respondent's actions. Exhibit A, ¶ 8. Therefore, Petitioner is entitled to full payment of his costs and expenses by Respondent.

## IV.    CONCLUSION

65. In conclusion, the default judgment evidence established that Respondent has failed to plead or otherwise defend in this lawsuit and thus default judgment is appropriate. Alternatively, the summary judgment evidence establishes that there is no genuine dispute as to a material fact that the Respondent wrongfully removed the Child from Honduras. More specifically, Petitioner has shown that the Child was a habitual resident of Honduras immediately prior to the Child's removal, Petitioner exercised his rights of custody prior to the removal, the removal was a breach of Petitioner's custody rights in Honduras, and the Child is under the age of sixteen.

66. The above premises considered, Petitioner requests this Court to consider his Motion for Default Judgment or, in the Alternative, Motion for Summary Judgment, and grant his Verified Complaint and Petition for Return of Child. Petitioner also requests that this Court award him costs and expenses in prosecuting his Verified Complaint, and that the court grant such other relief as is just and proper.

Respectfully submitted this the 30th day of December, 2016.

**HUSCH BLACKWELL, L.L.P.**

By: */s/ Jennifer Ziegenhorn*
Jennifer Ziegenhorn, BPR No. 016351
Jennifer.ziegenhorn@huschblackwell.com

1661 International Drive, Suite 300
Memphis, Tennessee 38120
(901) 523-1123
(901) 523-7472 *facsimile*

**ATTORNEYS FOR PETITIONER**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing instrument was delivered via the Electronic Case Filing (ECF) system and certified mail on December 30, 2016 on Respondent at the following address:

Fiama Magdalena Velasquez Cartagena
219 Michael Street
Knoxville, Tennessee 37914

*/s/ Jennifer Ziegenhorn*
Jennifer Ziegenhorn