## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE THE APPLICATION OF<br>OSMIN MANUEL GUARADO<br>ORELLANA, | ) ) ) | |
| | ) | |
| **Plaintiff/Petitioner,** | ) | |
| | ) | |
| v. | ) | NO. 3:16-CV-00444 |
| | ) | TRM/CCS |
| FIAMA MAGDALENA VELASQUEZ<br>CARTAGENA, | ) ) | |
| | ) | |
| **Defendant/Respondent** | ) | |

## AMENDED PRETRIAL BRIEF OF
## FIAMA MAGDALENA VELASQUEZ CARTAGENA

At trial, Ms. Velasquez will show that the Court should not order the return of three-year-old Nathaly Abigail Guardado Velasquez to Honduras.

Before reaching any possible remedies, the Court must decide two central issues:

1. Whether Nathaly was "wrongfully removed" from Honduras under the circumstances. 22 U.S.C. § 9003(e)(1).

2. Whether, pursuant to Article 13(b) of the Hague Convention, there is a grave risk that Nathaly's return would expose her to physical or psychological harm or otherwise place her in an intolerable situation. 22 U.S.C. § 9003(e)(2)(A).

Nathaly's mother, Respondent, Fiama Velasquez, respectfully submits that her decision to bring Nathaly to the United States to escape abuse, for which was no recourse under Honduran law, was not wrongful and that to order the child's return would place Nathaly in grave risk of physical or psychological harm or place her in an intolerable situation.

Ms. Velasquez will prove at trial through testimony and exhibits that she was the victim of domestic abuse, that she reported that abuse to the authorities, that she has no recourse because of Honduran law explicitly favors the male, and that it would expose Nathaly to a grave risk of harm to order her return to Honduras.

Ms. Velasquez will not set out all expected proof because the Court has indicated it will accept post-trial proposed findings of fact and conclusions of law; rather, Ms. Velasquez will attempt to outline the issues and the legal framework through which the Court must decide these issues.

## I.   FACTUAL BACKGROUND

Respondent Fiama Velasquez is the mother of three-year-old Nathaly Abigail Guardado Velasquez.  Nathaly currently lives with her mother in Knoxville, Tennessee.  Ms. Velasquez brought her two children from Honduras in September 2015.

Many of the background facts are uncontested.[1]  It is admitted that the petitioner is the father of the child.  Nathaly was born on November 14, 2013 in El Progresso, Yoro, Honduras. The petitioner and respondent were not married.

Ms. Velasquez intends to offer proof that during the child's infancy, the petitioner began a course of conduct that would expose Nathaly to physical or psychological harm and place her in an intolerable situation.  Petitioner both psychologically and ultimately physically abused Ms. Velasquez.  Ms. Velasquez sought protection but had nowhere she could go permanently in Honduras.  On or about September 5, 2015, Ms. Velasquez reported to the police that the petitioner had psychologically and physically abused her and had done so previously and that the abuse had

---

[1] Respondent Velasquez has filed an Answer admitting many of the factual averments, has responded to Requests for Admission, and the parties are working on proposed stipulations.

taken place in front of the child. The complaint, which was signed by Fiama Velasquez, as translated states:

> The complainant states that on 9/5/15, her partner named OSMIN GUARDADO, for no reason, began to attack her psychologically and physically, insulting her and making several obscene words, then began to beat her violently and aggressively in various parts of the body; Nevertheless it should be mentioned that Mr. OSMIN GUARDADO from previous days, has been having this type of behavior towards the complainant and that he attacks her psychologically and physically very often and the worst of all is that he does it in front of his two children, one named CARLOS YAIR GARAY VELAZQUEZ and the girl named NATALY ABIGAIL GUARDADO VELAZQUEZ who was born out of that relationship; therefore, the victim makes this complaint in order to bring the whole weight of the law and its penalties relating to the case.
> Attacker: OSMIN GUARDADO
> Suspect: OSMIN GUARDADO

In reporting the time, the document also states "late at night he attacks her constantly."

The petitioner avoided being arrested. Ms. Velasquez was further aware that no action would be taken by the authorities to protect her and Nathaly. Accordingly, approximately one week later, Fiama and Nathaly and Fiama Velasquez's other child left the village and traveled, primarily, by bus, through Mexico and entered the United States.

They were detained after crossing the border into the United States. The United States allowed Fiama and Nathlay to enter, and they are seeking asylum in the United States.

In Knoxville, Ms. Velasquez lives with Carlos Garay since arriving, Ms. Velasquez has given birth to another child. Nathaly is being well cared for in the United States.

## II. MS. VELASQUEZ'S DECISION TO REMOVE NATHALY WAS NOT "WRONGFUL."

Pursuant to the Child Abduction Remedies Act, petitioner must establish by a preponderance of the evidence "that the child has been wrongfully removed or retained within the

meaning of the [Hague] Convention." 22 U.S.C. § 9003(e)(1). As the Court previously described, the petitioner must demonstrate that the child was "(1) removed or retained away from the country in which the child was a habitual resident immediately before the removal or retention; (2) that removal or retention was in breach of custody rights pursuant to the law of the child's habitual residence; and (3) that the time his child was removed or retained, (petitioner) was actually exercising his rights of custody." Doc. 26: Order, p. 8, quoting *Guevara v. Soto,* No. 3:15-CV-548-TAV-CCS, 2015 WL 9484502 (E.D. Tenn. Dec. 29, 2015); *In Re Prevot*, 59 F.3d 556, (6th Cir.), *cert. denied* 516 U.S. 1161 (1995).

Here, it is helpful to look at the text of the Hague Convention:

> Article 3
>
> The removal or the retention of a child is to be considered wrongful where –
> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> b) at the time of removal or retention those rights were <u>actually exercised</u>, either jointly or alone, or would have been so exercised but for the removal or retention.
> The rights of custody mentioned in sub-paragraph a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Doc. 1, Ex. A, p. 2 (emphasis added).[2]

Thus, the Court will have to determine whether the petitioner has shown that he actually exercised his rights at the time of removal under the circumstances.

It is anticipated that the petitioner will argue that the fact that the child received medical attention and went to church shows that those rights were exercised; however, Ms. Velasquez will

---

[2] The parties agree that the Hague Convention applies, and for consistency the respondent will cite to the copy of the convention filed by petitioner.

show that Ms. Velasquez admits that she did not discuss or get explicit permission for the removal, but that was impossible under the circumstances. *See also* Article 13.

Further, prior to making a determination, in contested situations like this one, the Court may request a ruling that the detention was wrongful pursuant to Honduran law:

> Article 15
> The judicial or administrative authorities of a Contracting State may, prior to the making of an order for the return of the child, request that the applicant obtain from the authorities of the State of the habitual residence of the child a decision or other determination that the removal or retention as wrongful within the meaning of Article 3 of the Convention, where such a decision or determination may be obtained in that State. The Central Authorities of the Contracting States shall so far as practicable assist applicants to obtain such a decision or determination.

Doc. 1, Ex. A, p. 5.

Consideration of Honduran law is important to determine whether return is appropriate:

> Article 14
> In ascertaining whether there has been a wrongful removal or retention within the meaning of Article 3, the judicial or administrative authorities of the requested State may take notice directly of the law of, and of judicial or administrative decisions, formally recognized or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable.

Doc. 1, Ex. A, p. 5.

Ms. Velasquez will offer proof based on experience regarding the application of Honduran law and the fact that she had no recourse. In addition, Honduran law specifically favors the male in a way that both rendered any further efforts on her part futile and in a manner such that the courts of the United States cannot enforce. Pursuant to Article 194, which is pled by the petitioner as controlling, Doc. 1, Ex. L, p. 60, "it will generally rule that the children be left in the custody of the father in whose company they have been up to the moment of the disagreement, preferring

the father if they were in the company of both except in any case where there are reasons which warrant any other solution."

The Convention specifically gives this Court authority to refuse the return based on this type of discrimination:

> Article 20
> The return of the child under the provisions of Article 12 may be refused if this would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

Doc. 1, Ex. A, p. 6. It would violate fundamental principles of the United States to order the child returned to a country in which Ms. Velasquez's parental rights would be diminished by gender based on the operation of law.

## III. RETURN TO HONDURAS WOULD EXPOSE NATHALY TO GRAVE RISK OF PHSYCIAL OR PSYCHOLOGICAL HARM OR OTHERWISE PLACE HER IN AN INTOLERABLE SITUATION.

Pursuant to Article 13(b) of the Hague Convention, there is an affirmative defense to return whether respondent established by a clear and convincing evidence that return would expose the child to physical or psychological harm or place the child in an intolerable situation. 22 U.S.C. § 9003(e)(2)(A). Doc. 26, p. 10. The full text of Article 13 is as follows:

> Article 13
> Notwishstanding the provision of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person, institution or other body which opposes its return establishes that –
> a)  the person, institution or other body having the care of the person of the child was not actually exercising the custody rights at the time of removal or retention, or had consented to or subsequently acquiesced in the removal or retention; or
> b)  there is grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.
> The judicial or administrative authority may also refuse to order the return of the child if it finds that the child objects to being returned and has attained an

6

age and degree of maturity at which it is appropriate to take account of its views.

In considering the circumstances referred to in this Article, the judicial and administrative authorities shall take into account the information relating to the social background of the child provided by the Central Authority or other competent authority of the child's habitual residence.

Doc. 1, Ex. A, pp. 4-5.

The proof, based on petitioner's conduct, will show that there is a grave risk that the child would be exposed to physical or psychological harm or be placed in an intolerable situation. Additionally, petitioner based on his conduct, cannot be found to have been actually exercising his custody rights, or he acquiesced in the removal by his conduct.

As noted above, respondent Velasquez will be able to show both psychological and physical harm that occurred in front of the child. There is no reason to suggest that she would not be placed in the same environment upon her return. Ms. Velasquez has photographic evidence of bruising from the assaults. Petitioner also acquiesced to the removal under Article 13 (a) by his conduct in creating an intolerable situation.

The inability of the Courts of the child's country of habitual residence to properly adjudicate custody may be determined to be a "intolerable situation." *Pilego v. Hayes*, 843 F.3d 226, 232-33(6th Cir. 2016), *citing* 22 U.S.C. § 9003(e)(2). See also Steven Michael Neumann, Plaintiff-Appellee, v. Julie Anne Neumann, Defendant-Appellant., No. 16-1825, 2017 WL 1162926, at *9 (6th Cir. Mar. 27, 2017).

The Sixth Circuit has provided guidance regarding the evaluation of a risk and what amounts to an intolerable situation. In *Simcox v. Simcox*, 511 F.3d 594, 607-608 (6th Cir. 2007), the Court said:

First, there are cases in which the abuse is relatively minor. In such cases it is unlikely that the risk of harm caused by return of the child will rise to the level of a "*grave* risk" or otherwise place the child in an "*intolerable*

7

situation" under Article 13b.  In these cases, undertakings designed to protect the child are largely irrelevant; since the Article 13b threshold has not been met, the court has no discretion to refuse to order return with or without undertakings.  Second, at the other end of the spectrum, there are cases in which the risk of harm is clearly grave, such as where there is credible evidence of sexual abuse, other similarly grave physical or psychological abuse, death threats, or serious neglect.  In these cases, undertakings will likely be insufficient to ameliorate the risk of harm, given the difficulty of enforcement and the likelihood that a serially abusive petitioner will not be deterred by a foreign court's orders.  Consequently, unless "the rendering court [can] satisfy itself that the children will in fact, and not just in legal theory, be protected if returned to their abuser's custody," the court should refuse to grant the petition.  Third, there are those cases that fall somewhere in the middle, where the abuse is substantially more than minor, but is less obviously intolerable.  Whether, in these cases, the return of the child would subject it to a "grave risk" of harm or otherwise place it in an "intolerable situation" is a fact-intensive inquiry that depends on careful consideration of several factors, including the nature and frequency of the abuse, the likelihood of its recurrence, and whether there are any enforceable undertakings that would sufficiently ameliorate the risk of harm to the child caused by its return.

The proof will show that this case falls into the grave risk of harm category and that it involves psychological and physical abuse that were perpetrated in front of the child.  *See also Walsh v. Walsh*, 221 F.3d 204 (1st Cir. 2000)(citing social science literature establishing that serial spousal abuses are also likely to be child abuser in finding that the respondent had met her burden of proving a grave, grave risk); *Holmes v. Holmes*, 877 F.Supp. 2d 755 (E.D. Mich. 2012) (petition to remove denied based on part of domestic violence). [3]

This filing is not meant to take the place of post-trial proposed findings of fact and conclusions of law but to guide the court as to the standards necessary in evaluating the claims of the parties.

---

[3] Additionally, there is a wealth of information on domestic violence and Article 13(b) located at https://gspp.berkeley.edu/global/the-hague-domestic-violence-project.

## IV.    POTENTIAL EVIDENTIARY ISSUES

It is anticipated that the parties will be able to resolve most of the contested issue.  One issue that may arise is that the petitioner has taken the deposition of Natali Garay.  Respondent will object to the introduction of this deposition in that the deponent who is technically the spouse of Carlos Garay and therefore has natural bias offered primarily inadmissible speculation that was not based upon personal knowledge regarding Ms. Velasquez's domestic abuse and the situation.

Another evidentiary rule unique to Hague Convention hearings is that documents submitted either with the petition or later submitted documents submitted on issues relevant to the petition do not have to be authenticated.  22 U.S.C. § 9005.

## V.    CONCLUSION

At the conclusion of the hearing, after the submission of proposed findings and conclusions, Fiama Velasquez, the mother of Nathaly Velasquez, respectfully asks this Court to deny the petition and allow Fiama to remain in the United States to pursue her amnesty application.

Respectfully submitted this 4th day of April, 2017

RITCHIE, DILLARD, DAVIES & JOHNSON, P.C.

  /s/ WADE V. DAVIES
WADE V. DAVIES, [BPR #016052]
606 W. Main Street, Suite 300
Knoxville, TN  37902
(865) 637-0661
wdavies@rddjlaw.com

*Counsel for Fiama Magdalena Velasquez Cartagena*

9

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and exact copy of the foregoing has been filed electronically this 4th day of April 2017. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

<u>   Wade V. Davies          </u>
WADE V. DAVIES